59     375
s26NW  643
129    695

</div>

In the matter of the claim of Mary Ann Robinson v. Estate of John McAfee, deceased.

*Claim for personal services, what evidence will support—Statute of limitations.*

1. A niece filed a claim against the estate of her deceased uncle for her personal services rendered in his family, where she made her home for some years prior to her marriage, and claimed an express agreement on his part to pay for the same.   The only testimony tending to show such agreement consisted of expressions of love and affection made by the uncle to third persons for the claimant, and of his intention to do something for her and of providing for her in his will, all of which were made after she had left his house.

    *Held,* that there was no consideration for the alleged agreement, if made, and that a verdict should have been directed for the estate.

2. Claimant having left her uncle's house in 1870, and he dying in 1884, an implied promise to pay for her services, if the law raises one in such a case, was barred by the statute of limitations at time of the uncle's death.

Error to Wayne. (Speed, J.) Argued January 8, 1886. Decided January 27, 1886.

Appeal from award of commissioners. Administrator brings error. Reversed and claim disallowed.

*George S. Hosmer*, for claimant:

The case was properly submitted to the jury. Where services are performed an implied promise arises to pay for same: Parsons on Contracts, 46, unless shown to have been rendered voluntarily, except where performed for near relatives, in which case a strong, though not conclusive presumption arises that the services were voluntary and acts of affection, and this is a question for the jury, but even though so found to be, a promise to pay for same or provide by bequest is valid and may be found from deceased's admissions. The statute of limitations does not affect the case at bar. Such promises may be implied between parent and child, and the more distant the relationship, the slighter the presumption that the services were voluntary: *Thornton v. Grange*, 66 Barb. 507; *Guild v. Guild*, 15 Pick. 130; *Sword v. Keith*, 31 Mich. 258; *Torrey v. Young*, 39 Mich. 429; the declarations of deceased that he expected to pay for services may be shown: *Van Fleet v. Van Fleet*, 50 Mich. 1; the statements of deceased as to his intention to provide for claimant and that when he died whatever he had left should be given to her, with the other surrounding circumstances, are proofs from which a promise to pay after death may be presumed: *Engleman Executors v. Engleman*, 1 Dana, 437; *Jacobson v. Ex'rs of LeGrange*, 3 Johns. R. 199; *Robinson v. Raynor*, 28 N. Y. 496; *Thornton v. Grange*, 66 Barb. 507.

The jury having found a mutual understanding or agreement that claimant was to receive compensation for her services after her uncle's death, the statute of limitations cuts no figure in the case. Such an agreement is a valid contract, and if provision is not made in will or otherwise, there remains a cause of action against the estate, and the statute of limitations commences to run from the death of the promissor: *Sword v. Keith*, 31 Mich. 247; *Patterson v. Pat-*

*terson,* 13 Johns. R. 379; *Robinson v. Raynor,* 28 N. Y. 496; *Dickerson v. Dickerson,* 50 Mich. 37.

*T. C. Prosser* and *James H. Pound,* for estate:

The law will not imply a contract for wages between persons standing in the relation of parent and child. The parent is not entitled to the custody or earnings of his children after their majority, nor is he bound to maintain his nephews or nieces, nor is he entitled to their earnings, and if they live with him as members of his family without any contract or understanding that he shall pay for their services, or receive pay for their maintenance, the law will not imply a promise to pay on either side: *Williams v. Hutchinson,* 5 Barb. 122; *Robinson v. Cushman,* 2 Denio, 149; *Andrews et al. v. Forster,* 17 Vern. 556; *Fitch v. Peckham,* 16 Vt. 150; *Swires v. Parsons,* 5 Watts & Serg. 357; *Candor's Appeal, Ib.* 513; *Weir v. Weir,* 3 B. Monroe, 645; *Stone v. Carr,* 3 Espinasse, 1, 3; there is no evidence upon which to predicate an express contract as existing between claimant and deceased, and the absolute cessation of labor by claimant from April, 1870 to January, 1884, barred her claim if one existed: *Kimball v. Kimball,* 16 Mich. 211; *Payne v. Walker,* 26 Mich. 62; the statute of limitations began to run in 1870: *Carter v. Carter,* 36 Mich. 208–9; *Hillebrands v. Nibbelink,* 40 Mich. 646.

CHAMPLIN, J. Mary Ann Robinson filed in the probate court of Wayne county a claim against the estate of John McAfee, deceased, for services rendered during his life-time, as follows:

8 years' services as house-keeper and doing general house work, three years of said time being employed as clerk in shoe store, and doing machine work on uppers of shoes, and stitching on boots, @ $250 per annum, - - - - - $2,000
5 days' cleaning house in May, 1880, - 5
Services mending linen, etc., - - - - 5
                                              $2,010

DETROIT, May 6, '84.

The commissioners allowed the claim in the usual form at $600 in favor of claimant, and an appeal in due form was afterwards taken from such allowance by the administrator

to the circuit court for the county of Wayne from the probate court of said county, where the cause was tried before a jury, who rendered a verdict in favor of claimant for $900.

Mary Ann Robinson, whose maiden name was Mary Ann Gorman, was a niece of John McAfee, and was after the death of her parents taken into the family of her uncle when she was six or seven years old, where she continued to reside, with the exception of about two years, until she was married to Mr. Robinson, which occurred when she was about twenty-one years of age, and in the year 1870. At fifteen she visited Ireland, and was absent about two years. During the time she lived in the family of her uncle she did what household work she was able to do, and there is evidence of her clearing the sidewalk in front of his premises of snow, and splitting some wood. She also assisted him in his boot and shoe store. John McAfee died in 1884, so that if there was nothing more than an implied contract to pay for the services performed, her claim was barred by the statute of limitations at the time of his death. No attempt was made to prove the last two items of the claim.

The theory upon which the claim was pressed was that there was a special contract existing between John McAfee and claimant to pay her after his death for the services rendered by her while living in his family.

Two witnesses were introduced to substantiate this theory, a Mrs. Mary J. Morphy, who is a niece of McAfee, and a Mr. William H. Kinney, the family physician of claimant. Mrs. Morphy testified to the fact of claimant's living in McAfee's family, and to her services. She also testified to conversations with Mr. McAfee in which he expressed an intention to do something for claimant; that he would provide for her; that he considered her more than any of the relatives to him,—that is, nearer and dearer to him; that he would provide for her when he died; that the Sunday before he died he told this witness that he had made a will; and in that will he had provided for Mary Ann, and had not forgotten witness.

It appears from her testimony that these conversations were had after claimant had married and ceased to live with

him. The only thing that Dr. Kinney testified to was a conversation with McAfee in the summer of 1883, to the effect that when he died whatever he had left should be given to Mary Ann, as she justly deserved every cent that he had, and if it was $10,000 it would no more than pay her for what she had done for him ; that she had done more for him than any other relative that he ever had. There was no testimony given by claimant of any admissions made by McAfee of any agreement with claimant to pay her for her services, or of a promise to pay her therefor. All that the testimony introduced amounted to, viewed in its most favorable light for claimant, were expressions of McAfee, made from time to time, of an intention to do something for her, and these expressions were made after claimant had left his service.

The following questions were submitted to the jury and answered as follows :

*First.* " Do you find from the evidence in this case that any express contract was ever made by John McAfee, in his lifeteime, to pay the claimant, Mary Ann Robinson, for her services rendered by her to him prior to the time of her marriage ? "

The jurors aforesaid, upon their oaths aforesaid, answer, " To this we all say, yes."

*Second.* " If an express contract be found to have existence, when was it made ? "

The jurors answer as aforesaid, " We do not know."

*Third.* " Do you find from the evidence in this case that any contract was ever made by John McAfee with Mary Ann Robinson, the claimant, whereby he expected, and did promise, to pay her for her services, in addition to the compensation she obtained by being brought up in his family to the time of her marriage ? "

The jurors answer as aforesaid, " To this we all say, yes."

*Fourth question.* " If so, when, and where, was the contract made ? "

The jurors answer as aforesaid, " We cannot tell."

*Fifth question.* " If any contract is found to have been made, when was it agreed that payment should be made ? "

The jurors answer as aforesaid, " After death."

*Sixth question.* " Was there any express time of payment agreed upon, and if so, when was payment to be made ? "

The jurors answer as aforesaid, "After death."

The answers to the second and fourth questions failed to support the verdict rendered by them in favor of the plaintiff. Unless the testimony warranted, and the jury found the fact that the contract was made while the claimant was performing the service, and before she married and left the family of McAfee, there would be no consideration to support the promises claimed to have been made. The jury did not find, nor could they from the evidence appearing in this record, when the alleged contract was made. The motion made by the counsel for the estate, at the close of the testimony, to take the case away from the jury, and order a verdict in favor of the estate, on the ground that the evidence of the claimant had not established even a *prima facie* cause of action against the estate, should have been granted. Counsel for the estate was also entitled, in case the cause was submitted to the jury, to his first, second, third, fifth, and sixth requests.

The judgment is reversed.

It must be certified to the circuit and probate courts that the claim be disallowed. The appellant will recover costs of this and the circuit court.

The other Justices concurred.