## HICKS v. BARNES.

(Filed March 17, 1903.)

PARENT AND CHILD—*Contracts—Minor—In Loco Parentis.*

Where it appears from the evidence of the plaintiff that he when an orphan child had lived with his uncle as a member of his family and had grown up in this relationship, he is not entitled to recover compensation for services performed for his uncle.

ACTION by Bruce Hicks against A. T. Barnes, heard by Judge *Francis D. Winston* and a jury, at September Term, 1902, of the Superior Court of VANCE County.   From a judgment for the plaintiff, the defendant appealed.

*T. T. Hicks,* for the plaintiff.
*T. M. Pittman,* for the defendant.

CONNOR, J.   This action was begun before a justice of the peace for the recovery of $195 and interest from February, 1895.   The plaintiff alleged that he entered into the service of the defendant during the month of February, 1895 and continued therein until February, 1898; that his services were reasonably worth $7.50 per month; that he never received any compensation "except a very scanty supply of clothing" during the period of service, and his food and lodg-

ing; and that he was a minor, reaching his majority on the 23d day of February, 1902.

The defendant denied being indebted to plaintiff. The case was carried by appeal to the Superior Court and the following issue submitted to the jury: "Is the defendant indebted to the plaintiff and if so in what sum?" to which the jury responded "Thirty dollars with interest."

The plaintiff testified that his father died during the year 1895, his mother having died two years earlier; that he went to live with his uncle, the defendant, lived with him two years; that he swept the floor, cleaned his own room, sold milk, went to store and dusted furniture, waited on customers, packed and unpacked furniture. Defendant had a furniture store; helped about store, etc., fed cow and carried in wood, defendant had a man servant; did my part, did not go to school, started one day and had books, stopped at store, defendant had nothing for me to do, did not start again. Had some education before I went to defendant's, could read, write and cipher. Went to Norfolk; went with Burrow, Martin & Co., a large drug house; have been with them ever since. Defendant gave me no money. Had a railroad ticket furnished me; after I got to Norfolk, defendant sent me money, about $9.00 to buy clothes; made no claim on him for wages until I was 21 years old—did not go to defendant's as a hireling, no bargain was made, went there, not knowing where to go, was told to go, was there as a member of his family. No word of wages between us, and no suggestion that I was to be paid for it. Came and went with family; defendant had all my time except when at church, was kept in close at night and watched close. Plaintiff admitted that defendant proposed to a gentleman a relative of plaintiff, while plaintiff was with him, to send plaintiff to Wake Forest, defendant paying his board, and other relatives to pay his tuition and books, but the proposition was not accepted; he had some controversy

with defendant regarding manner of dress, left and went to Norfolk.

Defendant testified that plaintiff did no valuable service; after his father's death, some of his relatives met and sent for me, saying that he was an orphan boy and asked me to take him. I consented to give him a home and he went to live with me. He was my sister's son. I did not employ him. Received him as a member of my family, had no contract with him, said he wanted to go to my house and no where else, never heard of his sweeping floor or such work before his statement here to-day, nor of his making bed. I kept men and women servants, no difference made between him and my children. I was to use him as my child. Told him when he came to me that I would certainly correct him if he did not behave or obey, and he said he wished me to. I sent him transportation and wrote friends in Norfolk to look after him and get him work, also to get him necessary clothes which I paid for. His expenses when with me were included in my family expenses. I got no one in his place when he left."

His Honor charged the jury, 1. The law presumes when one person works for another, renders another valuable service, that the person for whom he works has agreed to pay what the services are reasonably worth.

2. If the plaintiff was placed by his relatives with his uncle to be reared as a member of his family, to be treated as his own, reared and cared for as such and to be put to doing those things incident to the relation of father and son, and no more was required of the plaintiff than is usually included by that relation, then the plaintiff can not recover.

3. If while in that relation he was at odd times put to doing service about home or occasional service at his home or the store, then in the absence of an express agreement the plaintiff can not recover.

4. But if the relations placed the plaintiff as a member

of the family of the defendant to be reared as a member of it, and treated as such; and the defendant placed the plaintiff in his store and kept him there as a clerk and under the direction of the defendant he did clerk there for two years, and two months then he would be entitled to recover for what his services were reasonably worth, less what has been received and less his board. You will ascertain what was the work done.

5. But if the relationship was not that but was that of master and clerk, then the clerk could recover and you would answer "Yes," and also the amount.

The defendant excepted to the charge:

1. That the instructions in paragraph four does not correctly state the law, because, the services therein described are not inconsistent with the relation therein stated, and that plaintiff would not be entitled to recover under such facts.

2. That there is no phase of the evidence that supports the view of the case submitted in paragraph five.

The first, second and third instructions were in strict accordance to the decisions of this court. The exception to the fourth instruction should we think be sustained. The relation existing between the plaintiff and the defendant, as testified to by the plaintiff, brings the case clearly within the principle announced and applied in the several cases found in our reports. In *Hussey v. Rountree,* 44 N. C., 110, it is held that while the step father is under no legal obligation to support the child, or the step-child to serve the step-father, if he maintained the child and the child labored for him, they will be deemed to have dealt with each other in the character of parent and child and not as strangers. In *Hudson v. Lutz,* 50 N. C., 217, Pearson J., says: "The same principle applies to a grand-father and child *when the one assumes to act in loco parentis.* . . . The grand-father allowed her (his daughter) and her child to live with him as members of his family

up to his death.    The relation of the parties rebuts the pre-sumption of a special contract." In *Dodson v. McAdams,* 96 N. C., 149; 60 Am. Rep., 408, the same principle was en-forced and the plaintiff, a grand-daughter held not entitled to recover for services.    Se also *Young v. Herman,* 97 N. C., 280.

In *Callahan v. Wood,* 118 N. C., 752, Faircloth, C. J., says: "We do not put our decision entirely on the kinship relation, but also on "one family" relation, established and maintained by the parties, and the entire absence of any intention to the contrary on the part of either party." In *Avitt v. Smith,* 120 N. C., 392, it is said: "In the absence of some contract, express or implied, showing an intention on the part of one to charge and the other to pay, the presump-tion is rebutted by the relationship."    The text writers fully sustain the principle which this court has adhered to: "When an infant lives with his own parents or with others, *whether relatives or strangers,* who stand *in loco parentis* to him, ren-dering them the usual domestic services and receiving sup-port and maintenance from such parents or strangers, as the case may be, there is no presumption of law on the part of the parent to pay the child for such services."    Rogers on Domestic Relations, Sec. 480; Tiffiny's Parsons' Dom. Rel., Sec. 251, 252.    In the light of these authorities, we think that his Honor should have instructed the jury, upon the plaintiff's own testimony to answer the issue in the negative. It is clear that he was there as a member of the family, there was no express contract to pay, and the law implies none. We approve of and concur in the opinion of Ruffin, C. J., in *Williams v. Barnes,* 14 N. C., 348: "I think such claims with-out probable evidence of a contract ought to be frowned on by courts and juries."    The evidence in this case is a striking illustration of the wisdom of this observation by this eminent jurist.    It is not the character of the services rendered which

determines the right to recover, but the relationship of the parties, and the manner of terms upon which the child enters into and resides in the family of the one standing *in loco parentis.*

We do not think that upon the whole of the evidence there is any tesimony to sustain the fifth instruction. Upon the plaintiff's own evidence, he was residing with the defendant as a member of his family—as one of his own children, and not as a clerk. There must be a new trial.

*Per Curiam*:—New trial.