## Bolling, et al. v. Bolling's Admr.

(Decided January 19, 1912.)

### Appeal from Boyle Circuit Court.

1.    Contract—Implied Promise—Services—Uncle and Nephew and Wife.—The rule that where the relationship of the parties was sufficient to raise the presumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for services rendered, but that an express contract must be proved, and to establish such a contract, stricter proof is required than in the case of an ordinary contract, applies in the case of services rendered by a nephew and his wife to his uncle with whom they are living.

2.    Same—Services—Action to Recover for—Evidence—Finding of Jury.—In an action by a nephew and his wife against the administrator of his uncle's estate to recover for the reasonable value of services alleged to have been rendered in keeping house for the uncle, nursing him, etc., evidence examined and held that the finding of the jury in favor of the defendant was not flagrantly against the evidence.

GEORGE E. STONE, C. H. RODES and ROBERT HARDING for appellants.

J. W. RAWLINGS and C. C. BAGBY for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Appellants, Thomas M. Bolling, and Carrie Bolling, his wife, brought this action against John A. Prall, administrator of J. B. Bolling, deceased, to recover $3,260 for services rendered the intestate at his special instance and request, in nursing and waiting upon him, and in washing, cooking, keeping house for him, etc. The administrator filed an answer denying the allegations of the petition, and pleading a counterclaim of $4,188 for rent and board. By reply, appellants pleaded a contract on their part to pay the intestate $100 a year in consideration of his furnishing appellants house rent and board, and by which the intestate further agreed to pay appellants a reasonable compensation for the services rendered as set out in the petition. Trial was had, and the jury returned a verdict in favor of the administrator. From the judgment predicated thereon, this appeal is prosecuted.

For appellants it is insisted that the verdict is palpably against the evidence, and that the instructions did not present the law of the case. Briefly stated, the facts developed by the evidence are as follows: Appellants went to live with the intestate, Dr. J. B. Bolling, about August 1, 1904. At that time he was in the neighborhood of eighty years of age. He was somewhat feeble, and his eye-sight was impaired. His wife had been dead for several years, and no one was living with him. He had a house and lot in the town of Perryville which he occupied as a residence. He had a small farm in the country, which he did not cultivate, but used principally for the pasturage of cows. From the time that appellants arrived, Mrs. Carrie Bolling did the cooking, house-work, and the greater portion of the time, the washing, ironing, etc. She also assisted Dr. Bolling in dressing by arranging his collar and tie, putting on his cuffs and tieing his shoes. Occasionally she would read the Bible and Courier-Journal to him. About three weeks before his death, Dr. Bolling was injured by a fall. From that time on he was unconscious the greater portion of the time, and Mrs. Bolling performed the duties ordinarily performed by a trained nurse. During all this time, Thomas M. Bolling assisted his wife, and in addition to that, drove up the cows and worked in the garden. At the same time, he traded in stock, but devoted most of his time to

buying and selling antique furniture which he stored in the Doctor's office. One witness testifies that Dr. Bolling sent him to appellants to induce them to remain with him, and told him to tell them that "he (Dr. Bolling) had plenty and they would be well paid for it." Another witness testifies that the Doctor was exacting, and would permit no one else to wait on him except Mrs. Carrie Bolling. On one occasion he said to Mrs. Bolling: "Carrie, didn't I promise to give you $500 a year to stay here and wait on me." Mrs. Bolling, who had gone out just a few minutes to attend to some household duties, said: "Yes, Uncle Doctor." Whereupon the Doctor said: "Why don't you stay here and take care of me?" To another witness the Doctor said that he expected to see Mrs. Bolling well paid for it, and didn't expect her to lose anything by it. To another witness he said he didn't owe anybody anything except Mr. Penny and Mrs. Bolling. A number of witnesses estimated the services rendered to be worth from $25 to $100 per month.

Appellants had a contract with Dr. Bolling, and several receipts are in evidence showing the payment by appellants of $100 each year for rent and supplies.

For appellee it was shown by three or four witnesses that appellants each admitted that the contract they had with the Doctor was to pay him $100 a year and take care of him, and in consideration therefor they were to live in the house and the Doctor was to provide everything. Appellants deny this, and claim they were not discussing the services sued for, but were discussing only the rent contract.

In its first instruction, the court authorized a recovery in the event the jury believed from the evidence that appellants had a contract with Dr. Bolling by which he agreed to pay them for the services rendered. In the second instruction, the jury were told in substance to find for appellee if they believed from the evidence that the contract with reference to rent and supplies also included the services rendered by appellants. It is earnestly contended that appellants were entitled to an instruction based upon an implied promise to pay the reasonable value of such services as were rendered to Dr. Bolling at his instance and request. In this connection we are cited to a number of cases holding that where services are performed for another at his special instance and request, the law will imply a promise to pay. While this is the ordinary rule, it does not apply to a

case of this kind. In a long line of decisions, this court has held that where the relationship of the parties was sufficient to raise the presumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for the services so rendered. On the contrary an express contract must be proved, and to establish such a contract, stricter proof is required than in the case of an ordinary contract. This rule has been held to apply in the case of parents and children, and brothers and sisters (Conway, &c. v. Conway, &c., 130 Ky., 218; Foley v. Dillon, &c., 105 S. W., 561, 32 Ky. Law Rep., 222; Wallace v. Denny's Admr., 90 S. W., 1046; 28 Ky. Law Rep., 978; Reynold's Admr. v. Reynolds, 92 Ky., 556; Mark's Admr. v. Boardman, 28 Ky. Law Rep., 455; Leahy v. Lillard, 26 Ky. Law Rep., 120; Price v. Price's Exor., 101 Ky., 28). It has also been held to apply in the case of uncle or aunt and nephew or niece (Weir v. Weir's Admr., 3 B. Mon., 645; Hurst v. Lane, 105 Ga., 506; Collar v. Patterson, 137 Ill., 403, 27 N. E., 604; Hays v. McConnell, 42 Ind., 285; Sloan v. Dale, 90 Mo. App., 87; Robinson v. McAfee, 59 Mich., 375, 26 N. W., 643; Hayden v. Parsons, 70 Mo. App., 493; In re Galway's Estate, 19 Miss. Rep., 92; 43 N. Y. Supp., 970; Hicks v. Barnes, 132 N. C., 146, 43 S. E., 604, Defrance v. Austin, 9 Pa., 309; Glenn v. Gerald, 64 S. C., 236; 42 S. E., 155; Andrus v. Foster, 17 Vt., 556, Riley v. Riley, 38 W. Va., 283, 18 S. E., 569.) It follows, therefore, that the court did not err in refusing to give the instruction offered by appellants, and presenting the case from the standpoint of an implied promise.

But it is further argued that as several witnesses testified to an express promise, and there was no evidence to the contrary, the verdict of the jury is flagrantly against the evidence, and should not be upheld. While it is true that appellee did not, and doubtless could not, prove by direct testimony that no such promise was made, yet he did prove admissions by each of appellants to the effect that the contract with reference to house rent and supplies was the only contract they had with the intestate, and that under this contract they were to perform the services sued for. Another strong circumstance is the fact that although appellants claim that each year, the intestate was indebted to them in the sum of $600 for services rendered, they kept paying $100 a year under their contract. Thus at the end of five years, the intestate, according to appellants, was indebted to

them in the sum of $3,000 and yet they continued to pay him when he owed them thirty times as much as they owed him. As the law requires stricter proof to establish a contract for compensation in case of this kind than in the case of an ordinary contract, we can not say, upon a consideration of all the facts and circumstances adduced by the evidence, that the finding of the jury is flagrantly against the evidence.

Judgment affirmed.