## Turner, et al. v. Young's Executor, et al.

(Decided October 30, 1913).

### Appeal from Warren Circuit Court.

1. Contracts—Services Rendered Mother by Daughter—Proof.— Though for services of an extraordinary and menial kind and covering a long period of years rendered by one member of a family to another living in the same household, the law does not require an express contract to be proven by stricter proof than in cases of an ordinary contract, yet it still requires proof of the fact that the services were performed and accepted with the understanding or expectation on the part of the parties that they should be paid for, and where there is no proof to this effect a claim for such services is properly disallowed.

2. Comissioners—Re-reference — Newly Discovered Evidence — Diligence—Abuse of Discretion.—Where a claimant asked for an order of re-refernce to the commissioner on the ground of newly discovered evidence, and the affidavit in support of such motion failed to show diligence, failure to grant the order was not an abuse of discretion on the part of the trial court.

J. M. SIMMONS and GEORGE H. GALLOWAY for appellants.

MAX B. HARLIN and JNO. B. GRIDER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Dismissing appeals of T. T. Turner and F. E. Helton, and affirming as to Prudia H. Turner.

Catherine Young, a resident of Warren County, Kentucky, died testate on May 28, 1911. After providing for the payment of her debts and bequeathing certain articles of personal property, she directed that all of her property be sold and the proceeds divided in six equal parts, one part to be given to each of her five living children, and to the bodily heirs of her daughter. who was dead. John B. Floyd was appointed and qualified as executor of the will. Shortly after her death he, as executor, and Prudia H. Turner, T. T. Turner and Fred E. Helton, as plaintiffs, brought this action against Candace Jeremiah and others for a settlement of the estate. The case was referred to the master commissioner to hear proof on claims. Among the claims filed against the estate was one by Prudia H. Turner for $2,552 for nursing and caring for her mother from November 12, 1907, to May 28, 1911. Another claim was for the sum of $75 in favor of Prudia Turner's husband, T. T. Turner, for building fences, hanging gates, putting down floors, and blacksmith work. F. E. Helton also presented a claim for $177 for feeding and caring for stock, repairing fences, etc. These claims were all allowed by the commissioner and his report was confirmed by the court. Subsequently certain infant and non-resident defendants, after giving proper notice to the plaintiffs, asked to have set aside the order of the court confirming the commissioner's report as to the claims in question, and that they be allowed to file exceptions to the report allowing said claims. This motion of defendants was sustained, and the case again referred to the commissioner. After hearing considerable proof, the commissioner disallowed the claims of Prudia

Turner, T. T. Turner and F. E. Helton, which action of the commissioner was confirmed by the court. From the judgment so entered this appeal is prosecuted.

As neither the claim of T. T. Turner nor the claim of F. E. Helton amounts to $200, exclusive of interest and costs, it follows that this court is without jurisdiction to entertain the appeals. For that reason their appeals are dismissed.

On the hearing before the commissioner, it developed that Prudia T. Turner was twice married. By her first marriage she had two children, Fred and Nora Helton. Her second husband is appellant, T. T. Turner. By her last husband she had several children. Some time prior to November, 1907, Prudia Turner and family moved into a tenant house on the farm owned by her mother, Mrs. Young. Prudia Turner and family had but little property. Subsequently her mother, Mrs. Young, was paralyzed, and thereupon Prudia Turner and family moved into the residence of her mother and remained there until her mother's death. During that time they occupied the premises jointly with their mother, and Fred Helton cultivated the farm on shares. It appears that Mrs. Young had $300 when Mrs. Turner moved there, which it is claimed by the Turner family was spent by Mrs. Young for her own needs. It further appears that after Mrs. Young was paralyzed she was unable to care for herself. It was necessary to assist her with her meals, to dress and undress her, and give her frequent injections on account of her constipated condition. During a greater portion of the time she was in need of constant attention, and such services were performed by the Turner family, and principally by Mrs. Turner. These services were estimated to be worth from $2 to $5 a day. While the character and value of the services performed is fully made out by the evidence, there was no proof of a contract between Mrs. Young and her mother. For this reason the commissioner disallowed Mrs. Turner's claims. On the filing of the commissioner's report, Mrs. Turner filed an additional affidavit and asked a re-reference to the commissioner on the ground of newly-discovered evidence. In her affidavit Mrs. Turner swore that since the commissioner filed his report she had learned for the first time that she could prove by her daughter, Nora Helton, that on frequent occasions she was present when Mrs. Turner would state in the hearing of her mother that she was a poor woman, and that

none of the other children would wait on her mother, and that her mother had property to pay for waiting on her, and that she expected to be paid; and that when these remarks were made her mother would say "Yes, yes." Mrs. Turner also swore that she could prove by Doctors Strother and Francis that her mother, Catherine Young, was of unsound mind from the date of her stroke up until her death, and was, therefore, unable to make a contract. The court declined to re-refer the case, and confirmed the commissioner's report.

In a long line of cases this court has held that where the relationship of the parties is such as to raise the presumption that they lived together as a matter of mutual convenience the law will not imply a promise to pay for services rendered by one to the other. On the contrary, an express contract must be proved, and to establish such a contract stricter proof is required than in the case of an ordinary contract. Bolling. et al. v. Bolling's Admr., 146 Ky., 313; Conway, &c. v. Conway, &c., 130 Ky., 218; Foley v. Dillon, &c., 100 S. W., 561, 32 Ky. L. Rep., 222; Wallace v. Denny's Admr., 90 S. W., 1046, 28 Ky. L. Rep., 978; Reynolds' Admr. v. Reynolds, 92 Ky., 556; Mark's Admr. v. Boardman, 28 Ky. L. Rep., 455. But counsel for Mrs. Turner insist that her case falls within the rule laid down in Humble, et al. v. Humble, et al., 152 Ky., 160. That case does not modify the rule announced in the foregoing cases except to the extent of holding that stricter proof of an express contract will not be required in a case of extraordinary and menial services covering a long period of years. The necessity of proving a contract, or of showing that the services were performed and accepted with the understanding or expectation that they should be paid for, was still recognized. Even if it be admitted, therefore, that the services performed by Mrs. Turner were of the kind referred to in that case, still there was no proof before the commissioner that they were performed by her or accepted by Mrs. Young with the understanding or expectation that they should be paid for. That being true, neither the court nor the commissioner erred in disallowing her claim.

The only other question for determination is: Did the court err in refusing an order of re-reference? The order was asked for on the ground of newly-discovered evidence. That evidence was to the effect that Mrs. Turner claimed in the presence of her mother that she expected to be paid for the services rendered, and that her mother

said "Yes, yes," and on the further ground that her mother was incapable of making a contract. Leaving out of consideration the inconsistency of these two positions, it appears that the principal part of the evidence tending to show that the services were performed and accepted with the understanding or expectation that they were to be paid for was to be given by Mrs. Turner's daughter. Why this evidence was not discovered sooner does not appear. Then, too, if Mrs. Young was of unsound mind, Mrs. Turner, who lived with her for over three years, must have known of this fact. It is apparent, therefore, that the motion for a re-reference was based on alleged newly-discovered evidence, part of which she necessarily knew and part of which she could have known by the exercise of the slightest care. There being a total failure of diligence on her part, we cannot say that the trial court abused its discretion in refusing again to refer the case to the master commissioner.

On the appeal of Prudia H. Turner the judgment is affirmed. The appeals of T. T. Turner and Fred E. Helton are dismissed.