## Petrie, et al. v. Winn, et al.

(Decided April 27, 1920.)

### Appeal from Muhlenberg Circuit Court.

1. Contracts—Conveyance of Real Property in Consideration of Care and Attention.—A father and mother conveyed their real property to two sons in consideration of the sons providing the parents a home, care and attention; the father went to visit a daughter and while there fell sick, and shortly thereafter died. During his sickness the sons promised the daughter, who was then waiting upon the father in his sickness, that they would pay her for her services in taking care of him, and she rendered the services with the expectation of receiving compensation. Such facts do not bring the case within the familiar rule prohibiting a recovery of one relative of another for care and attention, where they live together as one family for the mutual advantage of all.

2. Contracts—Conveyance of Real Property in Consideration of Care and Attention.—As the evidence for the plaintiff, uncontradicted, establishes an unconditional promise on the part of the sons to pay their sister for the care and attention furnished the father whom they were bound to support, maintain and care for, the plaintiffs made out a prima facie case which the court should have submitted to the jury.

T. D. JONES and W. J. ROSS for appellants.

TAYLOR, EAVES and SPARKS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Some time before May, 1917, George Winn and wife, aged and infirm, conveyed 'to their sons, Andy and Clay Winn, two tracts of land in Muhlenberg county in consideration of the grantees caring for the grantors and furnishing them a suitable home, board, clothing, medical attention and nursing so long as the parents, or either of them, lived. The sons took charge of the lands and began to carry out their contract by providing their father and mother with a home and such things as were necessary and satisfactory to the parents under the contract. Along in May, 1917, the father, George . Winn, went to visit the daughter, Mrs. Maude Petrie, and while there fell sick, lingered about three or four weeks and died. During his sickness he required a great deal of attention which was largely supplied by the daughter, Mrs. Petrie, and her husband. Mr. Petrie made several trips to a nearby village to procure food, medicine and ice required by the patient. The sons to whom the lands had been conveyed came to see about their father and brought certain provisions, and during the last week of his sickness one of them remained with him and assisted in waiting upon him. The defendants paid the doctor bills, gave him a decent burial and paid to Mr. and Mrs. Petrie thirty ($30.00) dollars in cash. Shortly thereafter the Petries brought this action against Andy and Clay Winn to recover $300.00 for care and attention given to George Winn during his last sickness and death. On a trial before a jury, in addition to the above facts, the plaintiffs introduced evidence showing that they had provided the deceased with many necessities and had given him constant care and attention, and further that the defendants came to . their house for the purpose of taking the father home, but the father was to ill to be moved and decided to remain at the Petrie home, whereupon said defendants asked the plaintiffs to take care of Mr. Winn and agreed and promised to pay them for their services. Plaintiff Ballard Petrie's evidence concerning the express promise to pay for the services rendered, is as follows:

"Q. Did you have to sit up with him at night, nursing him day and night too? A. We did for a week or more, but my wife was up all through the night. She lay on a bed close to him where she watched him and got up and waited on him. Q. Did the defendants, Andy and Clay Winn promise to pay you and your wife for

nursing and taking care of George Winn? A. They certainly did; they said they would pay us and pay us well for our trouble. Q. Did they say that more than once? A. Yes, I heard them say it several times. Q. You and your wife were expecting it? A. Certainly. We thought it was their duty to take care of them. I don't think there is airy' case that ever come up before— . . . Q. Now did both Clay and Andy Winn tell you they were going to pay for this service? A. Yes, sir; they said if the old man wanted to stay up there they would pay us well for our service; the old man deeded them the place and they said they would pay us for our trouble. Q. That was the consideration for which your mother-in-law, Mrs. Winn, and your father-in-law, Mr. Winn, conveyed this property to Andy and Clay Winn, that they would take care of them? A. Yes, sir. . . . Q. Mr. Petrie, how long had Mr. George Winn been at your house before these two boys, Andy and Clay Winn, told you they were going to pay you for services rendered him there? A. How long? Q. Yes? A. They told me several different times; I do not remember the time. Q. Had he been there as much as three weeks? . . . A. I could not tell you how long he had been there because I do not remember. Q. They did not tell you they were going to pay you anything for his staying there or for your services performed for him, until after he got sick, did they? A. They wanted to take him home, and they said 'We will take you home if you feel like you can stand it.' and he said he did not want to go and they said 'we will pay you for your trouble.' Q. How long was that after he went there? A. I could not tell you, I do not remember.''

Thomas Winn, a brother of the defendants and also of the plaintiff, Maude Petrie, testified for the plaintiff, saying:

''Q. I talked with Andy a great deal. I remember Andy telling me before he died that he ought to pay her, and then after he died he came out where we were and I said: 'You ought to pay Maude for what she has done,' and he said: 'I am going to pay her well for what she has done.' . . . Q. Did you ever hear Clay say they was going to pay her for the services? A. No, I never heard him say anything about it.''

Another witness named Tom Welborn testified:

"Me and Tom and Andy had a conversation, but Clay wasn't there. Me and Andy and Tom went down to the well, some hundred yards from the house, and Tom asked Andy why his mother didn't come and help wait on father, and he said she wasn't well, but he asked him where she was Sunday before, and she went to a Holy Roller baptizing. He said he would see that he needed no attention; it was hard on Maude, Petrie's wife, but he would see that they were taken care of and it wasn't any of Tom's business, and they would pay her well. Q. He would see that Mr. Petrie and Mrs. Petrie were paid? A. Yes, sir."

At the conclusion of the evidence for the plaintiff the court, upon motion of the defendants, peremptorily instructed the jury to find and return a verdict for defendants, Andy and Clay Winn. Judgment being entered in accordance with the verdict, the Petries appeal.

We infer from statements contained in briefs of counsel that the trial court concluded the facts in this case brought it within the rule announced in the case of Armstrong's Admr. v. Shannon, 177 Ky. 547, where we held that where relatives live together as one family for mutual convenience, neither can have a recovery for services or entertainment furnished the other except upon clear proof of an express promise or agreement to pay therefor. An implied contract is not sufficient to support such a claim. This case, however, does not come within that rule, because the evidence for plaintiffs clearly shows an express agreement on the part of the defendants to pay for the entertainment and services performed for George Winn for which the defendants were liable. The evidence above quoted leaves no doubt that such an agreement existed. Of course, it is subject to be contradicted by evidence for defendants, but there was sufficient evidence to have warranted the trial court in submitting the case to the jury under proper instructions. It was the duty of Andy and Clay Winn to care for, lodge, feed, clothe and nurse the deceased, George Winn, and when they engaged the Petries to perform these duties for them, they were responsible therefor to the Petries, and the statutes of fraud, under the facts of this case, would not be an available defense.

Complaint is made that the court did not allow Mrs. Maude Petrie, wife of plaintiff, Ballard Petrie,

to testify after the husband had testified, but we think the court made no error in this, because under section 606 Civil Code, in a case like this, either the husband or the wife could testify but not both.

Upon another trial if the evidence is similar to that upon the last trial, the court will submit the case to the jury under proper instructions. Appeal granted and judgment reversed.