## Lucius' Administrator v. Owens.

(Decided February 6, 1923.)

### Appeal from Daviess Circuit Court.

1. Work and Labor—Services—Implied Promise—Relatives.—In an action on a claim for care and nursing, clear and convincing evidence must be shown that an express contract for the payment of such services existed, and in this action such an agreement is not shown by the evidence.

2. Work and Labor—Services—Implied Promise.—Where the relation of the parties is sufficient to raise the presumption that they live together as a matter of convenience, or as members of the same family, no presumption will be raised of an agreement to pay for care and attention. The services being natural, an express promise must be proved before a recovery can be had.

CLEMENTS & CLEMENTS and T. F. BIRKHEAD for appellant.

GEORGE S. WILSON and R. P. ROBERTSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

By this action in the Daviess circuit court appellee Dan Owens sought to and recovered a judgment against

the administrator of Henry Lucius on a claim for nursing and taking care of the intestate, Henry Lucius, father-in-law of appellee, and who resided in appellee's home for more than two years next before his death. The administrator appeals relying chiefly upon two grounds: (1) That the evidence introduced by appellee Owens in support of his claim was insufficient to carry the case to the jury or to sustain the verdict; (2) the court erroneously instructed the jury to find for appellee Owens, if it believed from the evidence that the services rendered by Owens to decedent were performed under such circumstances and conditions as to raise the implied obligation on the part of Lucius and his estate to pay for the same. Appellee Owens in his petition averred substantially that the services were extraordinary and not such as are usually incident to taking care of a member of the family even when sick, and further that the decedent, Lucius, agreed and promised to pay for the services. Appellant moved for an election but this motion was overruled, and he excepted. No effort was made by appellee to show any extraordinary services on his part to Lucius, so that alleged cause of action was abandoned; there remained for appellant Owens but one ground of recovery—a specific promise by decedent Lucius to pay for the services.

The evidence shows that Lucius was the father of Mrs. Owens, wife of appellee Owens, and that he went to live at the home of his daughter and appellee more than two years before his death, and for that time lived as a member of the family. While he was old and somewhat diseased, he was able to go about most of the time. Occasionally he had short sick spells but would be up and out in a day or so. About a week or ten days before his death he took seriously ill and was confined to his bed until he passed away.

Where one seeks to recover for nursing, care and attention to a close relative, he must show by clear and convincing evidence the existence of an express contract to pay for such services or his claim will be denied. The only evidence offered by appellant in support of his averment that decedent Lucius expressly agreed and promised to pay him for his services in nursing and caring for him was given by the witness, V. O. Smith. That witness was asked:

"Q. In your conversation that Henry Lucius—this conversation that you had with Henry Lucius—did he indicate to you that he was going to pay Dan Owens for

the services he rendered Mr. Lucius? (Appellant objected; objection overruled.) A. He did. He said he was going to pay him."

After taking the evidence of several witnesses on other subjects, V. O. Smith was recalled and was asked these questions and gave the answers indicated:

"Q. I will ask you if Dan Owens was present at the time you had that conversation with Mr. Lucius? A. Yes, sir, he was present. Q. Was that conversation about the time he went to Dan Owens' to live? A. Yes, sir. Q. Did he state in that conversation and in the presence of Dan Owens what he wanted to pay him for? A. Yes, sir. Q. What did he say he wanted to pay him for? A. For his services in taking care of and looking after him."

This evidence does not prove an agreement between the decedent Lucius and his son-in-law Owens to pay for services rendered the father-in-law by the son-in-law. In fact, no agreement is shown to have been made between decedent Lucius and appellee Owens by which the appellee was to receive compensation for the services which he says he performed. We have held in a number of cases that mere declarations by the sick relative, living in the home, that he intends to pay some named member of the family for the services being rendered to him, does not establish the existence of a contract, even though such expression be made in the presence and hearing of the person rendering the services.

In the case of Bolling v. Bolling's Admr., 146 Ky. 313, we held that where the decedent upon whom the daughter-in-law waited in his sickness had said to her or in her presence "He (the decedent) had plenty and they would be well paid for it." And again, "Carrie, didn't I promise to give you $500.00 a year to stay here and wait on me?" To which she answered. "Yes, sir." We held that such statements did not amount to proof, in a case like this, sufficient to establish an express contract to pay for the services.

In the case of Armstrong's Admr. v. Shannon, 177 Ky. 548, the witness testified: "I heard him (decedent) say that at his death he intended for my mother and father to have all he had. I heard him say that at Aunt Prince's death he intended that my mother and father should have all that he had for taking care of him." "Q. Where did that conversation occur, and who was present? A. Well, it was at our old home; he

was sitting in our family room and I was sitting there by him, and my father and my mother were present." We held the foregoing evidence insufficient to establish an express contract to pay for the services. So it appears the doctrine is well established in this jurisdiction that where the relation of the parties is sufficient to raise the presumption that they live together as a matter of mutual convenience or as members of the same family, no presumption will be raised by the law that one member, though sick, has promised or agreed to pay the other members of the family, or any one of them, for services rendered to the sick person. On the contrary, the presumption is that the services, being natural, were rendered without hope or expectation of pay, and before a recovery can be had an express contract must be proved, and to establish such a contract stricter proof is required than in case of an ordinary contract. This rule applies not only to cases between parent and child but between uncles and aunts on the one side and nephews and nieces on the other, and between cousins and other near relatives. In the Bolling case, *supra,* the services were rendered by the daughter-in-law, and we held that the evidence to establish the alleged agreement to pay for the services was insufficient, and further that to make out a case the evidence of an express contract must be clear and convincing. The presumption is that where persons live together as one family they do so for mutual convenience. Every child is under a natural obligation to look after and take care of his aged parent even when well, and much more so when the parent is sick. It would be against sound public policy to allow a child or the spouse of a child to recover for alleged services upon an implied contract, or in any case in the absence of an express contract thoroughly established by the evidence. Bolling's Admr. v. Bolling, 146 Ky. 313; Conway v. Conway, 130 Ky. 218; Price v. Price, 101 Ky. 28; Armstrong's Admr. v. Shannon, *supra;* Petrie v. Winn, 187 Ky. 797.

Measured by the foregoing authority the evidence offered by appellee Owens in support of his claim was wholly insufficient to support it, and the trial court should have directed the jury to find and return a verdict for appellant, administrator of Lucius.

The instructions were erroneous in that they directed the jury to find for appellee Owens in case it believed from the evidence that the services were rendered under

such circumstances as to have raised the presumption that the appellee Owens expected to receive compensation and the decedent expected to pay therefor. Even though the evidence showed such a situation to have existed between the decedent and appellee Owens, no recovery could have been based thereon.

For the reasons indicated the judgment is reversed for proceedings not inconsistent with this opinion.

Judgment reversed.