## Berry's Ex'r v. Jones.

February 18, 1949.

John E. Richardson, Brents Dickinson, Jr. and Richard L. Garnett for appellant.

Marion Vance for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

W. M. Berry died testate in September, 1946, possessed of an estate appraised at $17,900, most of which consisted of real property. He devised and bequeathed his entire estate to his nephew, Franklin Berry, in trust for Laura V. Berry, the testator's wife, with directions that the trustee should take over and manage all of the property, with the power to sell and convey, and out of the proceeds should support, maintain and care for Mrs. Berry in the manner to which she had been accustomed during the testator's lifetime. Upon the death of Mrs. Berry all of the property goes to Franklin Berry who was nominated executor of the will. Mrs. Eula Jones, a niece of Laura V. Berry, filed a claim with the executor for $4,018 for ''services in cooking, housekeeping, nursing and waiting upon him (decedent) and his wife since February 22, 1932.'' The executor refused to pay the account, and Mrs. Jones brought an action to recover the amount of the claim. She alleged in her petition that the decedent promised to pay her for her services, and stated on several occasions between 1932 and 1944 that he would take care of the matter in his will; that in 1944 he did execute a will in which he devised to her one-third of his estate, but on May 19, 1945, his nephew, Franklin Berry, fraudulently influenced him to change his will and to execute the will which had been probated. She further alleged that the decedent caused her to read the will executed in 1944 in order to assure her that she would be amply paid for the services she had already rendered and those to be rendered, and that, relying upon his promises, she rendered the services itemized in her claim. The defendant filed an answer containing a general denial, and pleading the five year statute of limitations, KRS 413.120, and payment for any services rendered by the plantiff. The court sustained a demurrer to the plea of limitations, but on the trial sustained defendant's motion for a peremptory as to all services rendered prior to five years before the death of W. M. Berry. By thus sustaining the plea of limitations, the plaintiff's claim as filed against the estate, was reduced

from \$4,018 to \$2,208. The jury returned a verdict for the latter amount.

It is appellant's contention that appellee, being a niece by marriage of the decedent, could only recover on an express contract, and since she failed to prove a contract the court should have directed a verdict in appellant's favor. Conceding for present purposes that the relationship of the parties was such as to raise the presumption of gratuity, we think the evidence was sufficient to show the existence of an express contract to pay for the services and to overcome the presumption. The rule applicable where the relationship is such as to raise the presumption of gratuity or mutuality of benefit is stated thus in Lucius' Adm'r v. Owen 198 Ky. 114, 248 S.W. 495, 496:

"So it appears the doctrine is well established in this jurisdiction that, where the relation of the parties is sufficient to raise the presumption that they live together as a matter of mutual convenience, or as members of the same family, no presumption will be raised by the law that one member, though sick, has promised or agreed to pay the other members of the family, or any one of them, for services rendered to the sick person. On the contrary, the presumption is that the services, being natural, were rendered without hope or expectation of pay, and before a recovery can be had an express contract must be proved; and to establish such a contract stricter proof is required than in a case of an ordinary contract. This rule applies not only to cases between parent and child, but between uncles and aunts on the one side, and nephews and nieces on the other, and between cousins and other near relatives."

Here, appellee's son, sister, brother-in-law and several neighbors testified that the decedent stated on numerous occasions in appellee's presence that he intended to pay her for her services and would take care of the matter in his will. There is evidence that he executed a will in 1944 in which he gave his wife a life estate in all of his property, and at her death one-third each to appellee and his two nephews, Franklin Berry and Arie Berry, and caused appellee to read the will in order to assure her that he had fulfilled his promise.

The appellee, her husband and son lived on a farm owned by her husband, which was located about five miles by road from the home of decedent. The proof shows that decedent had been in declining health for fifteen years prior to his death, and that he sent for appellee whenever he or his wife was ill. Appellee always responded regardless of the weather or her own condition of health, sometimes going by automobile, sometimes on horseback and sometimes walking across the fields, a distance of three miles. She frequently remained at decedent's home several weeks nursing, cooking and performing all of the necessary household duties. On these occasions she left at home her husband and infant son who had suffered an attack of infantile paralysis. All of appellant's witnesses admitted that the appellee went to the decedent's home and waited upon the aged couple in cases of illness, but it is argued that the evidence as to the number of days so spent by her during each of the five years prior to W. M. Berry's death is too vague and uncertain to support the verdict. The evidence in this respect was supplied by the neighbors and by appellee's son, and, necessarily, was not exact, but it was sufficient to show that appellee had served the decedent at least the number of days claimed by her. In 1944 appellee and her husband moved to the decedent's home, lived there most of the year, and then returned to their own home. It is argued that during this time Mr. and Mrs. Berry and Mr. and Mrs. Jones were living together for mutual convenience and as one family, and that, under these circumstances, Mrs. Jones is not entitled to recover for services rendered by her during 1944. Appellant cites the rule illustrated by the following from Turner v. Young's Ex'r, 155 Ky. 604, 159 S.W. 1165, 1166, which involved the claim of a daughter against her mother's estate:

"In a long line of cases this court has held that, where the relationship of the parties is such as to raise the presumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for services rendered by one to the other. On the contrary, an express contract must be proved, and to establish such a contract stricter proof is required than in the case of an ordinary contract."

As we have seen, the evidence here was sufficient to show that W. M. Berry expected to pay appellee for the services rendered by her and she expected to receive compensation. This was sufficient to establish an express contract. Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459; Stacy's Adm'r v. Stacy, 296 Ky. 619, 178 S.W.2d 42; Bean's Adm'r v. Bean, 216 Ky. 95, 287 S.W. 239. A reasonable inference from the evidence is that appellee and her husband left their home and moved into decedent's home primarily to enable appellee to care for the aging couple, both of whom were feeble and frequently ill. At the time of his death W. M. Berry was 82 years of age and Mrs. Berry was about 80 years of age.

Appellant failed to sustain his plea of payment. Four checks issued to Eula Jones by W. M. Berry within five years prior to his death were introduced in evidence. Two of the checks were for $5 each and two were for $10 each. There was evidence that these payments to appellee were to reimburse her for groceries, medicines and other supplies purchased by her with her own funds.

Appellee has cross-appealed on the theory that her cause of action did not accrue until the death of W. M. Berry, and, therefore, she was entitled to recover for the services rendered during the entire period, beginning in 1932. Troxel v. Childers, 299 Ky. 719, 187 S.W.2d 264; Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S.W. 510, and other cases are cited. However, appellee requests that her cross-appeal be ignored if the judgment is affirmed on the original appeal.

The judgment is affirmed.