## Oliver, Guardian, etc., et al. v. Gardner, et al.

(Decided June 17, 1921.)

### Appeal from Allen Circuit Court.

1. Executors and Administrators—Compensation for Services.—The law will imply no contract for compensation for services rendered by a near relative to another, or by one occupying a family or domestic relationship to another, and compensation for such services will be denied in the absence of an express contract therefor, which contract may be shown by testimony that both the party rendering the service and the one receiving it expected and understood that compensation would be made.

2. Executors and Administrators—Compensation for Services—Contracts.—While expressions of gratitude by the one receiving the services or a desire that the one rendering them shall be compensated will not be sufficient to establish an express contract to pay for the services, yet an agreement to pay out of a fund as soon as it is obained and if it is not obtained before death to provide for payment at death out of the promisor's estate will be sufficient to establish an express agreement to compensate.

3. Evidence—Appeal and Error—Testimony of Incompetent Witness. —Testimony of an incompetent witness though objected to will be considered on appeal where the objections were not passed

upon by the trial court upon the ground that the exceptions will be deemed as waived by the exceptor.

OLIVER & DIXON for appellants.

No brief for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Dismissing the appeal of Miss America Weaver and reversing the judgment on the appeal of J. W. Weaver.

Prior to February 12, 1913, the mother of appellants, America Weaver and John Wesley Weaver, was and had been a widow for several years. There lived in the same neighborhood B. T. Williams, who owned a farm worth something like $2,500.00 or $3,000.00, and he was a widower, his only children and heirs at law being the appellees, Ella Maye Gardner, Mattie Cassidy and Dayton Williams, who were defendants below and all of whom were adults and did not reside at their father's home, who, as it seems from the record, lived alone. On the day referred to Williams married the widow Weaver, who with her two infant children (the appellants) moved to the home of her husband and they continued to reside there until his death, which occurred in April, 1919. At that time John Wesley Weaver was 13 years of age and Miss America Weaver was 16 years of age. In August, 1914, the decedent B. T. Williams suffered a stroke of paralysis which wholly unfitted him continuously thereafter to perform any work or labor and which rendered him at times almost, if not entirely, helpless. He does not appear to have been a very stout man before that stroke and John Wesley Weaver, his stepson, from the time of the marriage of his mother to Williams, was the main reliance of the family for support, and it may be said to his credit he did not shirk the responsibility in the least. After the affliction of Mr. Williams the entire burden of superintending and cultivating the farm fell upon the shoulders of John Wesley, supplemented by what assistance his sister could render him, which, according to the proof, was very considerable. Perhaps no higher recognition of the value as well as the extent of the services rendered by both appellants can be given than in the words of the decedent himself, while speaking to a disinterested neighbor. That witness said that decedent told him long after his paralytic stroke that ''my children are doing nothing for me, if it were not for

these, my wife and these (appellants), I could not have lived;'' and again, ''I don't know what ever I would have done if I hadn't married. I could never have lived the way I am, if I hadn't married and had them here with me to wait on me. They have been good to me.'' The proof shows that John Wesley did all kinds of farm work such as is usual and customary in the operation of a farm, and that his sister assisted him during busy seasons and at those times made a regular hand upon the farm, performing all sorts of needed labor, except she did no plowing. John Wesley did not receive any of the proceeds of the crop, nor did his sister, except their board and lodging, and the former received from the decedent throughout that period only one suit of clothes costing $7.50. His other necessary clothing was furnished by his statutory guardian who had in his possession $164.00 as John Wesley's share in the estate of his grandfather.

After the death of the decedent his widow renounced his will and was appointed administratrix of his estate according to the allegations of the petition. As such personal representative she brought this suit to settle his estate and it was alleged that the personal property of the decedent was insufficient to pay his debts and that it would be necessary to sell the farm for that purpose as well as for the purposes of division, and a judgment granting that relief was prayed. The case was referred to the master commissioner to report claims against the estate, and in his report filed in the case he included one in favor of John Wesley Weaver for the sum of $552.00 for four years' services rendered to the decedent prior to his death, and another for like services in favor of America Weaver for the sum of $183.50. Appellees (the children of decedent) filed exceptions to those claims and upon trial thereof there was no testimony heard except that offered by appellants, which consisted of the oral testimony of themselves and nine other witnesses, including their mother. The court sustained the exceptions and refused to allow either of the claims, and rendered judgment dismissing them and adjudged the costs against appellants, and to reverse that judgment each of them has appealed.

The appeals are separate ones though prosecuted upon the same record, and this being true we have no jurisdiction to review the action of the court in disallowing the claim of Miss America Weaver, since under no con-

ditions could we entertain an appeal where the amount involved was less than $200.00; but the amount involved so far as John Wesley Weaver is concerned, being above $500.00, confers upon us jurisdiction to review the judgment in so far as it affects him. In this connection it may be said, once for all, that if a recovery is to be allowed at all, the sums demanded, according to the unanimous as well as uncontradicted testimony, are exceedingly moderate. No one questions either the quantity or quality of the services rendered by either claimant, nor is there an intimation in the record of any neglectfulness or murmuring on the part of either of them.

Coming now to the law of the case, the rule is firmly established, perhaps without exception, that where parties occupy towards each other a family or domestic relationship and where they occupy the same home and render mutual services for the benefit of all there will be no implied contract raised in favor of any of them as against any of the others for compensation for such services. This rule not only applies to blood relatives but it likewise includes step-parents and step-children and other strangers in blood who occupy a family or domestic relationship toward each other. For an extensive discussion of the question in all of its phases we refer to the annotations to the case of Hodge v. Hodge, 11 L. R. A. (N. S.) 873, in which a great number of cases, both domestic and foreign, are classified, referred to and exhaustively considered, among which are Reynolds v. Reynolds, 92 Ky. 556; Turner v. Turner, 18 Ky. L. R. 822; Gallaway v. Gallaway, 24 Ky. L. R. 857, and Terry v. Warder, 25 Ky. L. R. 1486. Other cases from this court are Bolling v. Bolling, 146 Ky. 316; Bishop v. Newman, 168 Ky. 238, and Armstrong v. Shannon, 177 Ky. 547. In such cases the law presumes the services claimed for were gratuitously rendered, and especially so where near blood relationship exists; and they will also be presumed to be so rendered where there exists no blood relationship upon the idea that the parties sustained to each other family or domestic relations analogous to that existing between partners in a partnership. The authorities cited, however, including the cases from this court, go no further than to deny a recovery upon an *implied* contract and to allow it in all cases where there is an *express* contract to pay for the services. Within this rule it is not essential that the proof should show a formal categorical promise by the

one sought to be charged in order to create the "express contract" upon which a recovery will be allowed, since, in the language of this court in the Reynolds case, "any facts that would constitute, or are equivalent to, such an agreement" will be sufficient to establish an express contract; and in the Turner case it was said, "In such cases there must be proof either of an express contract to pay or of such facts and circumstances as fairly show that both the party rendering the service and the one receiving it expected and understood that compensation would be made. (17 A. & E. Ency. 336; Reynolds v. Reynolds, 92 Ky. 556; Heck v. Heck, 10 Ky. L. R. 281 (Superior Court); Hurst v. Stanberry, MS. opinion, 1 Barbour's Digest, 392, 1855.)" For cases applying the above rules to the relationship of stepparents to stepchildren, and *vice versa,* see the annotations, *supra,* page 885. What are sufficient facts to show that the parties "expected and understood that compensation would be made," from which an express contract might be inferred, must be determined from the testimony in each case and it must show something more than acknowledgment of gratitude on the part of the one receiving the services, and more than expressions of wish or desire that the party rendering them should be compensated, or perhaps more than an indefinite intention to compensate for the services some time in the future, as was held in the Bishop case, *supra.*

In this case the guardian of John Wesley Weaver shortly after the marriage of his mother to the deceased, R. T. Williams, approached the latter and told him that he, the guardian, must have compensation for the services of his ward, since he was under the impression that the court required him to realize something for his ward's services and it is in proof that deceased said: "He aimed for Wesley to have something for staying there and working." He furthermore said that he was going to sell his royalty and pay John Wesley for his services, but that if he failed to sell the royalty and could not otherwise pay until his death, he was going to fix it so that his stepson would get compensation out of his estate. The reference to a royalty was because decedent had placed an oil lease on his land from which he was to receive an aliquot part of the oil obtained from development under the lease. He was expecting the development to begin soon, after which time he would obtain sufficient royalties to discharge his obligations to his step-

son. That conversation and similar ones were testified to by a number of witnesses, some of whom were incompetent under the provisions of section 606 of the Civil Code of Practice, but the objections to their testimony were not passed upon by the court and under the ruling in the case of Tolly v. Champion, 191 Ky. 114, the testimony of these otherwise incompetent witnesses may be considered by us. There is sufficient competent testimony in the record, however, to show that the decedent not only expected to pay his stepson for the services rendered by him (and that the latter and his guardian expected to receive payment), but he actually agreed to pay for them, postponing such payment, however, until such time as he could sell his royalty, and if he was unable to do that he would then provide for payment out of his estate. And it was with this understanding that the infant through his guardian was permitted to continue rendering services. Such being the condition of the record the presumption of gratuitous service is removed and the court erred in sustaining the exceptions to the claim of appellant, John Wesley Weaver. It should have been allowed for the full amount claimed, since, as we have seen, the value of the services is shown to have been far greater than the amount demanded.

Wherefore, the appeal by Miss America Weaver, for the reason hereinbefore stated, is dismissed; but the judgment against John Wesley Weaver is reversed with directions to overrule the exceptions to his claim and to allow it as a debt against the estate of the decedent and for proceedings consistent herewith.