## DeFevers' Executor v. Brooks, et al.

(Decided June 6, 1924.)

### Appeal from Hart Circuit Court.

1. Executors and Administrators—Petition Held to Sufficiently Allege Contract to Pay for Services.—In action against executor to recover for services rendered testator, petition held to sufficiently charge that services were rendered at special instance and request of decedent, and that she agreed and promised to pay therefor, especially after verdict.

2. Work and Labor—No Implied Contract as between Parties in Family Relation.—No contract to pay for services as between parties occupying family relationship, will be implied, even though performer is stranger and not blood relative.

3. Work and Labor—Competent for Persons in Family or Domestic Relationships to Contract for Compensation for Services.—Independent of all relationship, it is competent for members of family or others in domestic relationship to contract for compensation for services personal to one of them, and when done agreed price may be recovered, and if none, then recovery may be had for reasonable value thereof.

4. Work and Labor—Implied Promise Arises to Pay for Services Not Personal.—For services rendered that were not personal, an implied contract will arise to pay for them, even in favor of one occupying family and domestic relationship, and among such non-personal services are washing, making or mending clothes, and other matters exclusive of board, lodging, and nursing.

5. Work and Labor—Mere showing of Acknowledgment or Gratitude for Services does Not Establish Express Contract for Compensation.—Where testimony only shows acknowledgment of or gratitude on part of recipient of services rendered by person in family or domestic relationship, accompanied by only expressions of wish or desire that the one rendering them should be compensated, and of an indefinite intention to compensate for services in the future, it is insufficient to establish an express contract for compensation, but it is not necessary that evidence should prove a categorical promise to pay and like agreement to render services upon that promise.

6. Work and Labor—Proof of Contract to Pay for Services Rendered.—If proven facts and circumstances are such as to fairly show that party rendering services and decedent expected, understood, and intended that compensation would be made, there is authority for finding an express contract for payment, though there is a family or domestic reationship.

7. Executors and Administrators—Whether Contract by Decedent to Pay for Services Rendered Existed Held for Jury.—In action by relatives for services rendered decedent, whether there existed express contract to pay plaintiffs for services rendered held for jury.

8. Executors and Administrators—Extent of Recovery for Services Rendered Decedent.—Recovery for services rendered decedent without agreement as to amount should be fair value of services rendered, and not amount required to compensate one rendering them for his labor, drudgery, and other unpleasant experiences in doing so.

9. Appeal and Error—Erroneous Instruction Held Not Prejudicial.—In action to recover for services rendered decedent, error in instruction permitting recovery in an amount that would compensate plaintiffs instead of reasonable and fair value of services, held not reversible error where it was plain jury allowed less

than services were worth, in view of Civil Code of Practice, section 756.

WATKINS & CARDEN and C. B. LARIMORE for appellant.

DOWLING & STRANGE and F. W. WHEELER for appellees.

Opinion of the Court by Judge Thomas—Affirming.

Mrs. Betty DeFevers, a widow without children, died testate and a resident of Hart county on April 6, 1921. She was eighty odd years of age at the time of her death and owned real estate of the value of as much as $8,000.00, and personalty of the value of $3,500.00. She was survived by one brother, who lived in the state of Missouri, and one sister, the appellee and plaintiff below, Eliza C. Brooks, who was about five years her junior, and whose husband was the appellee and plaintiff below, J. P. Brooks, who was a minister of the Gospel and had been for about fifty years. Mrs. DeFevers was a large fleshy woman weighing something like 250 pounds and was a cripple. For a number of years prior to her death, on account of her crippled condition, her age, size and flesh, she was unable to get about or perform scarcely any work of any character. In addition she had contracted, according to the undisputed proof, physical ailments seriously affecting her bowels and kidneys which were aggravated at frequent intervals, and during those attacks she was compelled to remain in bed and lost control of herself to such an extent that so far as those organs were concerned she was perfectly helpless. During the year 1916 she was living in the neighborhood of her farm with another sister then living, a Mrs. Brewer, and the farm was occupied and cultivated by a tenant. She was dissatisfied with her surroundings, conditions and the arrangements and desired to move back to and occupy her residence on the farm, but she had no one to stay with or look after her, and on July 19th of that year she wrote a letter to Mrs. Brooks, her sister, who was then living with her husband in Glasgow, Ky., in which among other things she said: "I have desired for you to live with me next year. I am so feeble, can't hardly go. Some of you will have to stay with me and take care of me." It appears that Mrs. Brooks did not answer that letter and on August 16th thereafter Mrs. DeFevers wrote another one to plaintiffs jointly complaining of the failure to answer the first one, and in that letter she com-

plained of being unwell, and stated that she was so weak that she could hardly walk and "I am going down fast now; I can't live long now I don't think. I wish you and Doc (the husband) would come and live with me next year and make a crop, you can make more than run the press. I have team and tools and feed, I need two old people to stay with me and a sister to care for me. So feeble can't care for myself. Doc, rent your press to some careful man that will take care of everything and come and stay with me next year. It will be best for you both. So if the last comes you will know more how things stands and all about it. My will is at Rufus Lane's in Canmer." In a subsequent letter she reiterated her extreme feeble condition and instructed her sister and the latter's husband to put up some canned fruit and vegetables for use the following year (1917), because she did not have any of those articles, and in that letter she expressed gratification that her sister and husband had agreed to live with her. Plaintiffs moved from their home in Glasgow to the home of Mrs. De-Fevers on the 31st day of December, 1916, and remained there till the 11th day of January, 1919, when they left and a tenant and his wife came into the house and stayed until December 22, 1920, when Mrs. Brooks and her husband, at the special instance and request of Mrs. De-Fevers, again moved in and remained there until April 6, 1921, when the latter died.

Her will was probated and after the qualification of her executor the plaintiffs presented to him a proven claim against the estate of the testatrix for the sum of $3,633.00 for services rendered to decedent for the 1,211 days plaintiffs lived with and took care of her, for which they made the charge of three dollars per day. The claim, though properly proven, was not paid and plaintiffs brought this action in the Hart circuit court against the executor to recover a judgment therefor, alleging in substance the above facts and "that all of said services were rendered at the special instance and request of the said Betty DeFevers and the said Betty DeFevers on divors occasions promised and agreed to compensate plaintiffs for their care and attention to her and for work and labor as above set out." Appropriate pleadings made the issues, and upon trial before a jury it, under the instructions given by the court, returned a verdict in favor of plaintiffs for the sum of $1,650.00, which the court declined to set aside on a motion for a

new trial, and from the judgment pronounced thereon the executor appeals.

Numerous errors are assigned against the correctness of the judgment, but we do not regard any of them as material except (1), insufficient allegations in the petition to charge an express contract, (2), insufficiency of the evidence to establish an express contract to pay for the services or such of them as were not personal to the decedent, and (3), error in giving instructions. We will dispose of them in the order named.

1. We are not seriously impressed with the first alleged error. The above inserted excerpt from the petition, while not strictly complying with the most accurate pleading, was nevertheless sufficient to our minds to charge that the services sued for were rendered at the special instance and request of the decedent and that she agreed and promised to pay therefor. Especially should that interpretation be given to the averment after verdict, and being of that opinion we do not deem it necessary to further discuss this ground.

2. The second error assigned against the judgment is, because of the somewhat confused condition of the opinions of this court, a more serious one. The general rule, as held by this court and numerous others, is: "That where parties occupy towards each other a family or domestic relationship, and where they occupy the same home and render mutual services for the benefit of all, there will be no implied contract raised in favor of any of them against any of the others for compensation for such services." Dawson v. Smith, 197 Ky. 342; Oliver, Gdn. v. Gardner, 192 Ky. 89; Reynolds v. Reynolds, 92 Ky. 556; Turner v. Turner, 18 Ky. L. R. 382; Gallaway v. Gallaway, 24 Ky. L. R. 857; Terry v. Warder, 25 Ky. L. R. 1486; Bolling v. Bolling, 146 Ky. 316; Bishop v. Newman, 168 Ky. 238; Armstrong v. Shannon, 177 Ky. 547; Jefferies' Executor v. Ferree, 175 Ky. 18; Humble v. Humble, 152 Ky. 160, and numerous other cases referred to in those opinions. From them it will also appear that in cases of such mutual family or domestic relationships, there will be no *implied* contract for services personal to the decedent, whether the performer of them be a stranger or a blood relative. Furthermore, that where there does exist either blood relationship or one of affinity springing from marriage, as step-parent, step-child, etc., there will be no implied promise of payment, notwithstanding the absence of such domestic or family relation-

ship upon the ground that the bestower of the services rendered them gratuitously to his or her relative of either class. However, all of the cases hold that independent of all relationship it is competent for the parties to contract for compensation for the services and when done the agreed price may be recovered, and if none then a recovery may be had for the reasonable value thereof. There is also another distinction which has been adopted and applied by this court and which is, that for services rendered that were not personal to the decedent, an implied contract will arise to pay for them, even in favor of one occupying any of the relationships above mentioned, and among such nonpersonal services are included washing, making or mending of clothes, and other matters exclusive of board, lodging and nursing. Frailey's Admr. v. Thompson, 20 Ky. L. R. 1179; Dance's Admr. v. Magruder, 26 Ky. L. R. 220; Durr v. Durr, idem 855, and the Humble case, *supra.* A reading of the cited opinions will show that in cases of this kind each one must be largely governed by its own facts. A proposition common to all of them is that where the testimony only shows the acknowledgment of, or gratitude on the part of the recipient of the services accompanied by only expressions of wish or desire that the one rendering them should be compensated and of an indefinite intention to compensate for the services in the future, will not alone be sufficient to establish an express contract for compensation. Dawson, Oliver and Bishop cases, *supra.* But all of the cases hold that, in order to establish such an express contract, it is not necessary that the evidence should prove a categorical promise by the recipient to pay for and a like agreement by the performer to render the services upon that promise. On the contrary the above cases hold that if the proven facts and circumstances are such as to fairly show that both the party rendering the services and the one receiving them expected, understood and intended that compensation would be made then the court or jury trying the case would be authorized to find an express contract for payment. Differently stated, our rule, as announced in those cases, is that if the proof shows that the one rendering the services expected to receive pay therefor and the one receiving them had knowledge of such expectation and himself intended to pay therefor, then an express contract may be found. If then the relationships *supra* existed between the parties and the services were not personal

such as hereinbefore referred to, there will be no implied promise to pay for them, and consequently no recovery may be had for their value under only an implied contract. If, however, there exists an *express* contract to pay for them, a recovery may be had for the agreed price, or in the absence thereof for their value, and such express contract, we repeat, may be proven by showing an expectation on the part of the one rendering them to receive compensation, and an intention on the part of the recipient with knowledge thereof to pay for them.

In the light of the foregoing condition of the law, our task is to determine whether the evidence in this case was sufficient to authorize the submission to the jury of the issue as to whether there was an express contract between plaintiffs and deceased to pay for the services rendered by the former to the latter. In some respects this case differs from many of the preceding ones disallowing the claim. In those cases the family or domestic relationship assumed was for the mutual benefit of both parties and that fact was emphasized in the opinions. There is nothing in this case to show that the relationship was in anywise beneficial to plaintiffs. They did not own a home, but it is not shown that they were paupers and they resided quietly in their rented home in Glasgow. They were beseechingly importuned by the decedent to break up their quiet housekeeping and move to the latter's home, and such imploring requests were always bottomed upon two facts, *i. e.*, the extreme helplessness and feebleness of the decedent and her great and pressing need of a sister to live with, look after and take care of her. Those importunities were hearkened to by Mrs. Brooks and her husband, and they temporarily disposed of some kind of printing shop or establishment he was operating and left their quiet home and moved to the home of the decedent not, as it appears from the record, to especially benefit themselves but to perform such acts and burdensome tasks as were necessary for the comfort, physical and social, of Mrs. DeFevers. Moreover, it was intimated in one of the importuning letters of the decedent that if plaintiffs should comply with her request they would know more about how things stood and all about her will which she informed them was in the hands of her present executor at Canmer, a neighboring village. That was at least a suggestion that financial considerations entered into the arrangement.

But, independently of what has been said, the testimony without contradiction shows that Mrs. DeFevers on a number of occasions stated, in substance, that she intended to pay plaintiffs and that they *would be* paid for the services they were rendering to her, and upon the entire case, which, as we have stated, is somewhat different from any prior one, we have reached the conclusion that the court did not err in authorizing, by its instructions, the jury to find a verdict for plaintiffs based upon an express contract; nor did it err in allowing a recovery for the services not personal to the decedent, such as washing, ironing, mending her clothing, etc., which, under the cases *supra*, may be recovered for independently of any kind of relationship existing between the parties.

3. Two of the objections more appropriately classified under this error were disposed of in considering error (2). A third one is that the court did not submit in its instruction number 1 the proper measure of recovery. By the instruction the jury, if it found for plaintiffs, was directed to return for them "such sum as will reasonably compensate said plaintiffs for such services as you believe from the evidence they rendered Betty DeFevers for not more than 1211 days and not more than $3,633," which was clearly erroneous, since the general rule upon the subject is that the extent of the recovery should be limited, in the absence of an agreed amount, to the reasonable and fair value of the services rendered and not the amount required to compensate the one rendering them for his labor, drudgery and other unpleasant experiences in doing so. If, therefore, the error in the instruction was the only fact entering into the disposition of this objection, we would be compelled to reverse the judgment therefor; but under our Civil Code of Practice (section 756) no judgment shall be reversed or modified "except for an error to the prejudice of the substantial rights of the party complaining thereof." This court has adopted, applied and followed that provision in almost an endless number of cases, as will appear in notes to that section in Carroll's Code of Practice, 1919 edition. The proof in this case shows that the services rendered by Mrs. Brooks while living at the home of Mrs. DeFevers, and which we need not detail here, were worth from three to ten dollars per day. Of course, the maximum valuation only applied to the periods when Mrs. DeFevers was confined to her bed, which were by no

means infrequent, and the judgment allowed her about $1.25 per day. Necessarily included in that amount was pay for nonpersonal services of the nature above described, the value of which alone, under the proof, would amount to perhaps half of the recovery. So that, in the light of the proof it is what might be termed glaringly apparent that from no viewpoint may it be said that the the erroneous instruction complained of operated "to the prejudice of the substantial rights" of Mrs. De-Fevers' estate as represented by her executor.

We are, therefore, of the opinion that the court properly overruled the motion for a new trial and the judgment is accordingly affirmed.