## Vanover v. Vanover et al.

(Decided Jan. 12, 1934.)

W. N. FLIPPIN for appellant.

BEN V. SMITH & SON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, J. M. Vanover, is the son of the appellee and defendant below, E. F. P. Vanover, by the latter's first marriage. There were no children as the result of his second marriage, and that wife died intestate and a resident of Pulaski county in 1927, when defendant, the surviving husband, was appointed and qualified as her administrator. She owned a farm containing about 75 acres, situated in the northern part of Pulaski county near the line between it and Lincoln county, and in the latter county near its southern line the husband owned a farm situated about 2½ or 3 miles from the one of his wife in Pulaski county. Adjoining that farm was and is one owned by appellant, J. M. Vanover. The husband and his wife resided on the latter's farm in Pulaski county from the time of their marriage many years ago, and his farm situated in Lincoln county was operated by him in connection with the management and operation of his wife's farm, where he resided. It is to be gathered from the record, although there is no direct testimony upon the point, that plaintiff, after his father's second marriage, also resided with his father and his stepmother on the latter's farm in Pulaski county. At any rate, he (appellant) sometimes cultivated his farm, either on shares or individually, and sometimes rented it to a tenant at an agreed rental. After appellant arrived at the age of maturity he took up the trade of carpentering and followed it, more or less, until the beginning of the transaction herein involved and hereinafter stated. He never married and had no fixed or permanently located home, but temporarily lived at the place where he was employed during the continuance of that job. In 1921, the health of the defendant (the husband and father) became slightly impaired, although he was only about 63 years of age,

and he concluded that he needed the assistance of some one in managing and looking after the cultivation of his wife's farm upon which, as we have stated, the family resided, as well as his own about 2½ miles distant therefrom. He also concluded that it would be convenient, as well as conducive to the best interest of his son, for the latter to be located near his farm where he could look after it more efficiently and more profitably than had theretofore been done. So concluding, he wrote to appellant, who was then working at his trade upon a job in Stearns, Ky., and suggested that he come and live with the father and the stepmother upon the latter's farm as a member of the family and assist the father in the management and operation of the two farms, as well as to more effectually and conveniently conduct the management of his own farm. That suggestion was agreed to by the son, and he took up his abode with his father and stepmother, where he remained until the latter's death in 1927. During that time he made a faithful hand, but he was largely assisted by his father, whose ability to perform physical labor was by no means destroyed and who was always capable of directing the way and manner that the agricultural pursuits should be conducted, and which he did throughout that period of about six years. The deceased wife left no heirs except some collateral kindred who were and are the children of a deceased sister and are the other appellees herein. They, as plaintiffs below, filed this action in the Pulaski circuit court against the husband individually and as administrator of his wife for a settlement of the latter's estate, and they coupled with a prayer for that relief another one asking for a sale of the Pulaski county farm for the purpose of division. The issues raised by the petition were settled by the trial court, and from which no one has appealed, and therefore none of them is here for review.

But, after the personal property had been distributed for nearly two years, and during the pendency of the cause, appellant filed his intervening pleading therein in which he sought to establish a claim against decedent in his favor for the amount of $1,740 for alleged services rendered her from April, 1923, until February 11, 1927 (the date of her death), as the alleged manager and operator of her farm, and which he claimed was worth $30 per month. He sought judgment against the distributees of his stepmother's estate to

the extent of the amount they received therefrom, and likewise a judgment against the estate to be paid out of the proceeds of the sale of her land, if he should not succeed in recovering his claim against her heirs and distributees. His entire claim was contested by proper pleadings, and upon final submission his intervening pleading was dismissed, and from that judgment he prosecutes this appeal.

The question as to when payment for services rendered a decedent by one seeking to collect therefor will be enforced has been presented to this court many times and under varying circumstances, resulting in the declaration that, whether compensation shall or shall not be allowed is determinable from the particular facts of each case, and especially so where the testimony is of such a nature as to render it doubtful as to the classification of the claimant within the rule now to be stated. That rule is, that the claim is always to be allowed when there is an express contract for payment, regardless of whether the claimant does or not sustain a near family relationship to the decedent as the one who was served. Furthermore, that such an express contract need not be couched in terms to show an express bargaining, but that it may be inferred from the circumstances of the case, chief among which are that the asserter of the claim, at the time of beginning his services, expected to receive compensation therefor, and that the one served intended that compensation should be paid. In such case an express contract may be inferred by the tribunal trying the case just as any other fact may be inferred from proof of unerring circumstances. In other words, an express contract may be established by circumstantial evidence, instead of direct, positive evidence. However, when so established the amount to be paid might have to be measured by the quantum meruit rule, whilst under an express contract established by direct and positive testimony the amount fixed therein, if any, will be the measure of recovery. The right to compensation under a contract so inferentially established is available to a near relative the same as to a stranger; the only difference being that the burden is cast upon the near relative, as it is also upon the one rendering the services under a mutual family relationship assumed thereby, to establish the contract by clear and convincing evidence, and which is not done by the mere acknowledgment of gratitude on the part

of the one receiving the services, or expressions of wish or desire by him that the party rendering them should be compensated. Such rules, and the declaration of the legal principles governing such cases, are all referred to, considered, and determined in the case of Oliver, Guardian, v. Gardner, 192 Ky. 89, 232 S. W. 418, 419. That opinion, and the many cases referred to therein, will be found to cover the entire field.

Illustrating the condition of the law in this jurisdiction upon the subject, we insert this excerpt from that opinion: "Coming now to the law of the case, the rule is firmly established, perhaps without exception, that where parties occupy towards each other a family or domestic relationship, and where they occupy the same home and render mutual services for the benefit of all, there will be no implied contract raised in favor of any of them as against any of the others for compensation for such services. This rule not only applies to blood relatives, but it likewise includes stepparents and stepchildren and other strangers in blood, who occupy a family or domestic relationship toward each other. For an extensive discussion of the question in all of its phases we refer to the annotations to the case of Hodge v. Hodge, 11 L. R. A. [N. S.] 873, in which a great number of cases, both domestic and foreign, are classified, referred to, and exhaustively considered, among which are Reynolds' Adm'r v. Reynolds, 92 Ky. 556, 18 S. W. 517, 13 Ky. Law Rep. 793; Turner's Adm'r v. Turner, 38 S. W. 506, 18 Ky. Law Rep. 822; Galloway's Adm'r v. Galloway, 70 S. W. 48, 24 Ky. Law Rep. 857; and Terry v. Warder, 78 S. W. 154, 25 Ky. Law Rep. 1486. Other later cases from this court are Bolling v. Bolling's Adm'r, 146 Ky. 316, 142 S. W. 387, Ann. Cas. 1913C, 306; Bishop v. Newman's Ex'r, 168 Ky. 238, 182 S. W. 165, and Armstrong's Adm'r v. Shannon, 177 Ky. 547, 197 S. W. 950. In such cases the law presumes the services claimed for were gratuitously rendered, and especially so where near blood relationship exists; and they will also be presumed to be so rendered where there exists no blood relationship, upon the idea that the parties sustained to each other family or domestic relations analogous to that existing between partners in a partnership."

Quoting from the case of Turner's Adm'r v. Turner, 38 S. W. 506, 18 Ky. Law Rep. 822, and commenting thereon, we furthermore said in that opinion: " 'In

such cases there must be proof either of an express contract to pay or of such facts and circumstances as fairly show that both the party rendering the service and the one receiving it expected and understood that compensation would be made. 17 A. & E. Ency. 336; Reynolds' Adm'r v. Reynolds, 92 Ky. 556 [18 S. W. 517, 13 Ky. Law Rep. 793]; Heck v. Heck, 10 Ky. Law Rep. 281 [Superior Court]; Hurst v. Stanberry [MS. opinion] 1 Barbour's Digest, 392, 1855.' For cases applying the above rules to the relationship of stepparents to stepchildren, and vice versa, see the annotations at 11 L. R. A. [N. S.] 885. What are sufficient facts to show that the parties 'expected and understood that compensation would be made,' from which an express contract might be inferred, must be determined from the testimony in each case, and it must show something more than acknowledgement of gratitude on the part of the one receiving the services, and more than expressions of wish or desire that the party rendering them should be compensated, or perhaps more than an indefinite intention to compensate for the services some time in the future, as was held in the Bishop Case, supra.''

The principle so declared in that (Oliver) opinion has been continuously followed and applied by us in later cases, three of which are, De Fever's Executor v. Brooks, 203 Ky. 606, 262 S. W. 976, Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, and Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S. W. (2d) 999. However, we pointed out in the latter (Sullivan) opinion some confusion in our opinions as to the application of the meaning of the term "implied" as applied to contracts; it being shown therein that the term "implied" was not the strictly accurate one when referring to an express contract established by circumstances or inferences. But the general principles, supra, governing the right of recovery in such cases, were adhered to in the Sullivan opinion. The questions are most elaborately discussed, and practically every case theretofore before this court was cited and referred to in the Kellum opinion. It will be observed that, in the absence of a positively proven express contract, there will be no implied or inferred one for compensation where the parties "occupy towards each other a family or domestic relationship, and where they occupy the same home and render mutual services for the benefit of all," and that the "rule not only applies to blood relatives

but it likewise includes step-parents and step-children and other strangers in blood who occupy (or thereby assume) a family or domestic relationship toward each other.'' The excerpt statement is extensively discussed in the annotations to the case of Hodge v. Hodge, 11 L. R. A. (N. S.) 873.

In the light of the law as so declared, we are forced to the conclusion that appellant failed to establish his right to the recovery he sought by his intervening pleading, and that the court properly dismissed it, since the testimony in the case fell far short of proving an express contract inferentially, circumstantially, or otherwise. The arrangement under which the services were rendered constituted the formation of a domestic relationship for the mutual benefit of all the members of the family, one of whom was appellant. He had his own lodging quarters in the family residence and went and came when he pleased. The domestic services performed for his benefit, such as looking after and taking care of his lodging quarters, his meals, washing, etc., were performed either by his stepmother or at her expense and under her supervision. In short, he was in every sense a member of the family, the assumption of which relationship was not only beneficial to him in establishing him in a permanent home, but likewise in locating him near his farm and in constant association with his only surviving parent, his father. There was never at any time any expression from the stepmother (the alleged debtor in this case), directly or otherwise, that she expected, intended, or even wished that appellant should receive payment for his services, although the most cordial relations existed between them. The witnesses testifying upon that issue, including appellant and his father (but perhaps both of whom were incompetent), expressly stated that no such expressions were ever made by the stepmother. On the contrary, the relationship was originally assumed and continued by appellant at the express solicitation and request of his father, and he expressly stated in his testimony that he consented thereto in order to be with and of assistance to his father, as well as benefit to himself by being located near to his own farm. His actions after the death of his stepmother go far toward establishing the conclusion that he neither anticipated nor expected payment for his services, since he made no mention of any claim until after all of the personal property of his step-

mother had long since been distributed and a year or more after this litigation was started to force a settlement of his father's accounts as administrator of his stepmother, but which he had already done before the petition was filed.

The reason for the establishment of the foregoing rules was twofold: One to prevent the assertion of fraudulent and unmeritorious claims against the estate of one whose lips are sealed; and the other to allow compensation where it was deserved, because expected by the one rendering the services and payment intended by the recipient thereof. It is thought, and we still think, that, as so framed and approved, the rules, supra, are best calculated to reach the justice of each particular case, and for which reason they were originally approved and applied by us as well as by other courts and also text-writers, as will be seen upon consulting the opinions referred to.

Having so concluded, it results that the judgment was proper, and it is affirmed.