# Rhoads et al. v. Laswell's Adm'r.

May 3, 1940.

Thomas A. Ballantine, Special Judge.

Trabue, Doolan, Helm & Stites for appellant.
Richardson & Richardson for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

On November 16, 1929, the appellee, Pearl Rhoads, executed to her mother, Sallie M. Laswell, three notes for $2,133.33 each, due respectively in one, two and three years after date, with 6% interest per annum, payable monthly, which were secured by a mortgage of even date on a house and lot on Second street in Louisville, Ky. Mrs. Laswell died intestate on Feb. 1, 1937, and her administrator brought this action to collect these notes and to foreclose the mortgage.

In her answer and counterclaim, Mrs. Rhoads admitted the execution of the notes and mortgage, but pleaded affirmatively that her mother by an express contract agreed to surrender the notes and release the mortgage in consideration of her maintaining, nursing and caring for her mother, which services Mrs. Rhoads alleged she performed until Mrs. Laswell's death.

The issues were joined by appropriate pleadings and the action was referred to a special commissioner to hear proof, which was taken by depositions. The commissioner found in favor of Mrs. Rhoads and recommended that the notes be surrendered and that the mortgage be released. The chancellor sustained the exceptions filed to the commissioner's report and adjudged the administrator should recover the notes with interest, and that the mortgage be foreclosed. Mrs. Rhoads ap-

peals. We will give sufficient facts to show the background of this case.

Mrs. Laswell was 87 years of age at the time of her death and her estate amounted to $15,800 (including the $6,400 in notes in controversy), all of which was in cash and high class securities except her home, which was appraised at $3,500. Some eight or ten years previous to her death, Mrs. Laswell was in failing health, and had lost an eye and the sight of the other one became so impaired that she was practically blind the last year or so of her life. She and her son, Oscar, usually called "Bub," an epileptic, made their home in a large house she owned on Fifth street and her other five children resided outside of Louisville. This afflicted son, although very dear to Mrs. Laswell, was somewhat of a care and a concern to her and as she was old and in failing health, she wrote a letter to Mrs. Rhoads in California on Oct. 5, 1934, and another on Christmas Day of that year, asking her to return home and to stay with her and "Bub," saying she would buy her a nice home which would be hers as long as she (Mrs. Rhoads) lived. Mrs. Rhoads returned to Kentucky and the record shows Charles P. Brecher and wife, on July 24th, 1929, conveyed her the Second street property which she mortgaged to her mother on the following Nov. 16th. While the record does not so state, it is evident Mrs. Laswell paid Brecher the purchase price for this property and to make herself secure she took the notes and mortgage in controversy from Mrs. Rhoads.

Besides this action, the administrator filed a suit to settle the estate, and another daughter of Mrs. Laswell's, Mrs. Nettie Runyan, filed a suit for partition of certain real estate. Without objection the three cases were consolidated, and it was stipulated that the testimony taken in the foreclosure suit against Mrs. Rhoads might be read in the settlement suit to which Mrs. Runyan was a party.

Mrs. Rhoads testified in her own behalf in the foreclosure suit and introduced the two letters she received in California from her mother. She further testified to conversations she had with her mother concerning the surrender of the notes and the release of the mortgage. The administrator filed no exceptions to Mrs. Rhoads' testimony, but Mrs. Runyan did, on the ground that subsection 2 of Section 606 of the Civil

Code of Practice prevented Mrs. Rhoads from testifying for herself against her deceased mother's estate. Appellant contends that as the administrator filed no exceptions to Mrs. Rhoads' testimony, he waived its competency; that the exceptions filed by Mrs. Runyan, who was not a party to this action, did not inure to the benefit of the administrator, but related solely to the action in which Mrs. Runyan was a party. It is further contended that as the exceptions to this testimony were not filed by Mrs. Runyan until long after the date had expired for filing exceptions to the commissioner's report, they came too late.

While not a party to the foreclosure suit, Mrs. Runyan is a party to the suit to settle the estate, which was one of the actions consolidated with it, and being a daughter and heir-at-law of Mrs. Laswell, she is directly interested in the foreclosure suit, therefore, we are clearly of the opinion that the exceptions filed by her to this testimony inured to the benefit of the administrator. For the purpose of the exceptions filed to this testimony, Mrs. Runyan and the administrator well might be considered joint parties defending the estate of Mrs. Laswell against Mrs. Rhoads' $6,400 claim. If we so consider them, then the exceptions of one to the testimony of Mrs. Rhoads redounds to the benefit of the other, since it is manifest it is not necessary for all of several plaintiffs, or defendants, to file separate exceptions to incompetent testimony; but the exceptions filed by one inure to the benefit of all parties jointly interested on the same side. We have held that where one of several defendants files an answer which precludes a recovery by plaintiff, it inures to the benefit of all defendants, and prevents a judgment against the defendant who did not file answer, until disposition of the issue is made. Beddow's Adm'r v. Barbourville Water, etc., Co., 252 Ky. 267, 66 S. W. (2d) 821; Welch v. Mann's Ex'r et al., 261 Ky. 470, 88 S. W. (2d) 1. We cannot understand why exceptions filed to the depositions of a party witness by an adverse party, who has the same interest in the result of the litigation as has the administrator, would not redound to the benefit of the administrator and make it unnecessary for him to file exceptions to this same testimony, just as an answer by one defendant may inure to the benefit of another. Appellant has cited us no authority to the contrary and we have found none.

Section 587 of the Civil Code of Practice provides exceptions to the competency or relevancy of depositions may be made before or during the trial. As this is an equity case and as the exceptions went to the competency of Mrs. Rhoads' deposition, it follows they were filed in time where they were filed before the chancellor rendered judgment. Lee v. Lee, 215 Ky. 266, 284, S. W. 1052; Hardin v. Robinson, 243 Ky. 648, 49 S. W. (2d) 563.

It is well settled in this jurisdiction that between members of the same family, or those closely related by consanguinity, whereby personal services are received and rendered for a valuable consideration an express contract may be inferred from the proof and circumstances. The important fact being, did the one rendering the services expect to be compensated and did the one receiving the services expect to pay therefor. The performer of the services has the burden of overcoming by clear and convincing evidence the presumption that such services were performed for the mutual benefit of the parties, or as a duty one relative, or member of the family, owes another. There must be something stronger than an acknowledgment of gratitude and a desire that compensation be paid upon the part of the one receiving the services. The testimony in each case must determine whether the facts are sufficient to show the one receiving the services expected to pay therefor, and the one who rendered them expected to be compensated. Oliver v. Gardner, 192 Ky. 89, 232 S. W. 418; Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S. W. (2d) 999; Vanover v. Vanover et al., 252 Ky. 308, 67 S. W. (2d) 21.

With Mrs. Rhoads' deposition eliminated, there is not sufficient proof to show an express contract between her and her mother whereby the latter agreed to surrender the notes and release the mortgage in consideration of Mrs. Rhoads' attention, care and nursing. The strongest testimony introduced in behalf of Mrs. Rhoads comes from Mesdames Sahner, Cronk, Rogers and Sheer, and when their testimony is boiled down it all amounts to about the same as that given by Mrs. Rogers, who testified: "(Mrs. Laswell) said, 'I want to have this home here to take care of my son—I am going to release the home to Pearl (Mrs. Rhoads), then for taking care of me.' And Mrs. Rhoads was

sitting right there." To our mind, this expresses little more than gratitude on the part of Mrs. Laswell and a desire that Mrs. Rhoads should be compensated. The proof shows that Mrs. Laswell was most penurious and that Mrs. Rhoads and family were on relief at various times from 1933 to 1935. If Mrs. Laswell had the intention of compensating Mrs. Rhoads by releasing the debt on this Second street home, why did she take a mortgage from her when the property was purchased in 1929? And if Mrs. Rhoads expected compensation for services she was to render her mother, why did she not speak up when the notes and mortgage were demanded, or at the time her mother expressed a desire that she be compensated as detailed by Mrs. Rogers? Mrs. Cartwright, another daughter of Mrs. Laswell, identified a paper as being in her mother's handwriting which purported to show the monthly interest paid by Mrs. Rhoads during the years 1930 and 1931. Why would Mrs. Rhoads pay this interest if she expected her mother to give her this home in compensation for her services? To refute the argument that it was subsequent to this time that Mrs. Laswell agreed to surrender the notes and release the mortgage, we have the testimony of such disinterested witnesses as Casper C. Hagner, an insurance agent, and R. C. Davis, a carpenter, and his wife, who testified Mrs. Laswell complained to them that Mrs. Rhoads owed her this mortgage debt and would not pay it, nor would she pay any interest thereon. According to the testimony of Fred Tomppert, an insurance man, and William Stewart, a colored man who drove Mrs. Laswell's car, and W. L. Wissman, a policeman, Mrs. Runyan was looking after Mrs. Laswell the last six months of her life and these witnesses say Mrs. Laswell complained that Mrs. Rhoads would do nothing for her and was forever attempting to borrow money from her.

Appellant puts much stress on the testimony of Mr. Hardin Herr, a highly reputable lawyer of Louisville, who testified that Mrs. Laswell, accompanied by Mrs. Rhoads, came to his office sometime prior to Sept. 1934, and one of these ladies said something about writing a will and releasing a mortgage. But Mrs. Laswell became ill in the office and had to be taken home and nothing was done. Mrs. Laswell lived more than two years after that occasion and if she had made an ex-

press contract with Mrs. Rhoads to forego this indebtedness, it is strange she never made an effort to release this mortgage, although it and the notes were in her lockbox which she visited at intervals in collecting interest from securities contained therein. If Mrs. Laswell ever intended to release Mrs. Rhoads from this debt, it is not at all unlikely that the alleged neglect of her by Mrs. Rhoads and the death of "Bub" in 1935, caused Mrs. Laswell to change her mind.

In the brief filed by amicus curiæ it is insisted that the evidence be stricken from the record, first, because no bill of exceptions was filed, and second, because the chancellor did not approve and attest the depositions taken by the official reporter which were brought to this court in their original form as is allowed by Section 4644, Kentucky Statutes. Amicus curiæ loses sight of the fact that this is an equity action and no bill of exceptions is necessary to bring the evidence here. It is only necessary in equity actions to make evidence a part of the record through a bill of exceptions where it has been heard orally before the chancellor. Fraley v. Peters, 12 Bush 469, 75 Ky. 469; Collins v. Richard, 14 Bush 621, 77 Ky. 621; City of London v. Barnett, 228 Ky. 471, 15 S. W. (2d) 286. An examination of the record shows that the chancellor examined, approved and signed each and every volume of the depositions taken by the official reporter as is required by Section 4644, Kentucky Statutes, and the contention of amicus curiæ that the record is fatally defective must be denied. If the depositions had not been signed and approved by the chancellor, there would have been no evidence before us in the present form of the record and no motion to strike would have been necessary and the defect could have been reached, as contended, merely by calling our attention to the fact in the brief. Harp v. Prudential Ins. Co. of America, 261 Ky. 295, 87 S. W. (2d) 595.

A careful consideration of this record convinces us that there was no express contract and we are in full accord with the chancellor in sustaining exceptions to the report of the commissioner and in allowing a recovery by the administrator against Mrs. Rhoads, with directions that the mortgage be foreclosed.

The judgment is affirmed.

Judge Tilford not sitting.