## E. L. Martin & Company, et al. v. Osborne, et al.

(Decided March 3, 1925.)

### Appeal from Leslie Circuit Court.

1. Fraudulent Conveyances—Fraud Never Presumed.—Fraud is never presumed, but must be affirmatively proved and there must be such legal evidence as is sufficient to overcome in the mind legal presumption of innocence and beget a belief of truth of allegation of fraud.

2. Fraudulent Conveyances—Transactions Held to Constitute a Palpable Fraud to Prevent Creditors from Collecting their Debts.—Evidence held to show that execution of note due one day after date, to son-in-law of one maker, suit brought thereon, attachment of stock of goods of makers and sale thereunder to such maker's son were a palpable fraud committed by both parties to prevent creditors of makers from collecting their debts.

M. C. BEGLEY for appellants.

LEWIS & LEWIS for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

On May 4, 1922, R. S. Osborne and Andrew Osborne executed and delivered to George Osborne their promissory note for $865.75, due one day after date. On May 6, the payee sued on the note, procured a general order of attachment, and had it levied on a stock of goods owned by the payors. Shortly thereafter, on application to the judge of the Leslie county court, an order of sale was procured, directing the stock of goods to be sold as perishable property. The sale was had on June 5, and when sold the stock of goods brought $930.00. It was purchased by James M. Osborne. The payors of the note had been engaged in the mercantile business under the firm name of R. S. Osborne & Son. It appears that at the time their stock of goods was attached they owed various wholesale houses for merchandise. After the sale, appellants, E. L. Martin & Company, et al., instituted equitable actions against appellees, R. S. Osborne, Andrew Osborne, and George Osborne, in which they charged that the note executed by R. S. and Andrew Osborne to George Osborne, and his suit against them to collect it, and the attachment proceedings thereunder were fraudulent, and that the note was executed and the

suit instituted and the attachment procured for the fraudulent purpose of preventing them from making their debts. Issue was joined, and the various actions were consolidated and heard and tried together. Upon the trial, the chancellor dismissed the petitions, and appellants enter their motion for this appeal and seek to reverse the judgment.

The facts developed in evidence are substantially these: The firm, R. S. Osborne & Son, had been engaged in business about 18 years. R. S. Osborne, the senior member of the firm, is a married woman. Her son, the other member of the firm, had not yet become 21 years of age when this lawsuit was tried. Consequently, he embarked in the mercantile business at an exceedingly tender age. George Osborne, to whom the $865.75 note was executed, is a son-in-law of R. S. Osborne, and since he possesses the same surname, doubtless is otherwise related to her. James M. Osborne, who purchased the stock of goods at the attachment sale, is another son of R. S. Osborne. It appears that the note was made payable "one day after date," and that two days after it was given to him, George Osborne, without again seeing his mother-in-law or brother-in-law or demanding payment of them, sued on the note, and procured the order of attachment. The suit on the note was not defended, and judgment was taken by default. The grounds of the attachment were not controverted, and the application to have the stock of goods sold as perishable was not contested. The explanation given by the Osbornes as to the consideration for the execution of the note was that, extending over a period of about three years, George Osborne, from time to time, had lent to the mercantile firm sums of money which it used in its business. No receipt ever passed between the parties at the times the various sums of money were claimed to have been lent. According to their testimony, R. S. Osborne represented the firm in borrowing the money. She did not make or keep any record or memorandum of the date or amount of any of the loans. From their testimony, it appears that sometimes George Osborne, acting in person, and sometimes his wife, acting for him, would furnish the money. The $865.75 was borrowed in ten different sums at ten different times. None of the parties to the transaction had any memorandum by which they could fix the date or the approximate date when any of the sums going

to make up that total amount were borrowed. There was filed with the depositions a page torn from a pocket memorandum book in which ten different amounts were entered in a column, the total of which was $865.75, and the parties testified that it was the only memorandum of the transaction ever made by them, and that it was kept by George Osborne's wife. There was nothing on the paper to indicate the date of any of the transactions. The entries were all made with lead pencil. Several witnesses testified, after having examined the leaf from the pocket memorandum book, that all of the entries appeared to have been made by the same person, with the same pencil, at the same time. The largest loan according to the memorandum was $200.00, and the smallest $25.00. None of the money claimed to have been lent in that way was paid by check. It was all counted out in cash. James M. Osborne, the son who purchased the stock of goods when sold, appears to have been living in Indiana at the time. Although the stock of goods was sold within a month after it was levied upon under the attachment, he appeared upon the scene to purchase it. Although, according to the terms of the sale, as advertised, the purchaser might have had three, six and nine months in which to pay, James M. Osborne paid spot cash. He claims to have brought $1,200.00 with him from his home in Indiana with which to purchase this stock of goods. Yet it develops from his testimony that he had never had any of the money in bank, but kept a part of it in his private lock box in his bank, and part of it in a receptacle in his study at home. He claims to have brought the money from home with him, and he paid the sheriff, not by check, but with money. Immediately after the sale of the stock of goods, the store was reopened, and as had been true theretofore, R. S. Osborne was found in charge of it. It appears that James M. Osborne had a daughter, about 18 years of age, teaching school in Leslie county. The Osbornes claim that the stock of goods was turned over to her, and that R. S. Osborne was merely assisting her. The daughter's activities at the store, however, were confined to such work as she did there on such Saturdays as she spent at the home of her aunt, R. S. Osborne. About a month after the sale of the stock of goods, James M. Osborne returned to Leslie county and spent approximately two months, during which time he was in and about the store, and appears to have made some incon-

sequential improvements on the store building and fix-
tures. It was given out that he would return to Leslie
county the following spring to take charge of his stock
of goods, and to take up his residence there. However,
the proof taken in the case much later than that discloses
that James M. Osborne never did return, and that his
daughter who had been teaching school had left Leslie
county and returned to Indiana. George Osborne,
pressed for an explanation as to his unseemly haste in
suing his mother-in-law and brother-in-law on the note,
explained by saying that his mother-in-law had promised
him that she would sell him the minerals under her land,
and that the money he was furnishing her could be
applied on the purchase price, but that she broke the
promise by selling her mineral rights to another of her
sons. However, no proof was offered to establish that
R. S. Osborne owned any land or minerals or that she
had conveyed any to another son. It was proved that
Andrew Osborne, shortly before the note was given and
the stock of goods attached, in talking about some other
small mercantile establishment that had been closed by
attachments procured by wholesale creditors, said that
there was no need for a merchant to permit his creditors
to make their debts in that way; that rather than let them
make their debts, the storekeeper should have executed
a sham note to some friend, and have had him sue and at-
tach and sell the stock of goods, and in that way prevent
the creditors from making their debts.

It is true, as contended by appellees, that the rule
adhered to by this court with respect to proof of fraud,
as announced in Hurst v. Duff, et al., 156 Ky. 218, is:

> "In view of the fact that the majority of man-
> kind deal honestly with each other, fraud is never
> presumed, but must be affirmatively proved. Fraud
> cannot be sustained by mere suspicion, strained in-
> ference or conjecture. Evidence which produces a
> vague misgiving is not enough. The rule in every
> case is that there must be such legal evidence as is
> sufficient to overcome in the mind the legal presump-
> tion of innocence, and beget a belief of the truth of
> the allegation of fraud."

Appellees insist that the facts of this case, when measured
by the rule above, are not sufficient to establish the fraud
charged by appellants, and the chancellor so found. How-

ever, this court is unable to agree either with appellees' contention or with the finding of the chancellor. We think the facts disclosed above speak for themselves. Nothing that we might say in discussing them could add to the story that they tell. It seems to the court that the execution of the note, the suit brought thereon, the attachment of the stock of goods, and the sale thereunder, in the light of the facts and circumstances surrounding the parties and the transaction, were a palpable fraud, committed by appellees to prevent appellants from collecting their debts. Entertaining that view of the case, the appellants' motion for an appeal is granted, the judgment is reversed, and the cause remanded with direction that it be adjudged that appellants are entitled to enough of the proceeds of the sale of the stock of goods to satisfy their debts.