## Beddow's Adm'r v. Barbourville Water, Ice & Light Company et al.

(Decided Dec. 15, 1933.)

J. B. CAMPBELL and R. L. POPE for appellant.

J. J. TYE and H. H. OWENS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

J. T. Beddow's administrator brought this action against the Barbourville Water, Ice & Light Company and L. R. Benjamin, its manager, to recover damages for his death. At the conclusion of the evidence, the trial court directed the jury to find for the defendants. The administrator appeals.

Beddow, who was a merchant, lived on Main street in the city of Barbourville. He intended to go fishing on the morning of June 25, 1931. The evening before he had obtained some crawfish, which had been placed

in a bucket with an iron bail. The next morning he arose about 4 o'clock and milked his cow, while his wife and the girl who worked for her were getting his breakfast. He returned with his milk, ate his breakfast, got his bucket containing the crawfish, and then started toward the main part of the city, through which he had to go in order to reach the river. There were no fences between the adjoining lots, and none between the sidewalk and yards. After walking across the edge of his own yard on to the sidewalk about the edge of his neighbor's yard, he returned to his home, and, according to Mrs. Beddow, his widow, who also testified that she did not think the lights were turned off in the kitchen before he left, he said: "That there was a wire down there up on the street and for me to watch the children and not let them get in to it, and he would go to the store and call them, and they would be up after a while and fix it." He then left the house, and when next seen was lying on his back, dead, with one wire across his right thigh, and another wire in a short distance from him. These were primary wires with a 2,300 voltage, and were used for the purpose of transmitting electricity to be used in lighting the streets. Beddow's hands were folded on his breast, with the right hand on top The inside of his right hand was burned and black. Some say that there was insulation in his hand, and others that there was not. There were places on the wires that were uninsulated. The bucket containing the crawfish was lying on the left side of Beddow. Some of the witnesses say that there were dead crawfish on the sidewalk, but others say that they saw none that were dead, but only those that were crawling around.

At the outset, we are met by the contention that Mrs. Beddow's evidence as to the statement made to her by her husband should have been excluded. It doubtless is true that she was not incompetent under section 606, subsec. 2, Civil Code of Practice, as to the prohibition therein contained against testifying concerning any verbal statement of one who is dead at the time the testimony is offered to be given applies only to a witness who testifies for himself and not to a witness who, as here, testifies for a third person. It is equally clear that that part of section 606, subsec. 1, providing that neither a husband nor his wife shall testify against the other or for the other except in certain cases not material, is not controlling, as Mrs. Beddow

did not testify for or against her husband, but testified against her husband's estate. Johnson v. Pigg, 242 Ky. 631, 47 S. W. (2d) 63. However, it must not be over-looked that that section further provides that neither a husband nor his wife shall testify while the marriage exists or afterwards concerning any communication between them during marriage. Her statement did not relate to a crime committed by the husband on the person of the wife, nor was it addressed solely to a third person in the presence of the wife. On the contrary, it was made directly to the wife, and would not have been made except for the marital relation, and there is no escape from the conclusion that it was a communication between her and her husband during the marriage, and therefore falls within the inhibition of the Code. Willey v. Howell, 168 Ky. 466, 182 S. W. 619; Leucht v. Leucht, 129 Ky. 700, 112 S. W. 845, 130 Am. St. Rep. 486; Allcock v. Allcock, 174 Ky. 665, 192 S. W. 853; Manhattan Life Ins. Co. v. Beard, 112 Ky. 455, 66 S. W. 35, 23 Ky. Law Rep. 1747; New York Life Ins. Co. v. Johnson, 72 S. W. 762, 24 Ky. Law Rep. 1867; Buckel v. Smith's Adm'r, 82 S. W. 235, 26 Ky. Law Rep. 494.

As it is apparent from the record that the trial court was of the opinion that the deceased was guilty of contributory negligence as a matter of law, and reached this conclusion on the theory that the statement of the deceased to his wife showed knowledge and appreciation of the danger, it is clear that the admission of the statement was prejudicial error. As appellant was entitled to a trial with that evidence excluded, we refrain from determining whether a directed verdict would have been proper if the evidence had been excluded.

The court did not err in refusing to permit the witness, Brumback, to testify that the presence of the wires at the place of the accident magnetized the concrete sidewalk to such an extent that Beddow would have been electrocuted even if he never came in contact with either wire. In the first place, Brumback was a mere repair man, and was hardly qualified to express an opinion on the subject. In the next place, the question assumed a situation not proven, and contrary to the physical facts. There was no mark or burn on Beddow's body, except in his hand, and that is the place where the current entered his body and caused his death.

After the jury returned a directed verdict for the defendants, appellant moved the court for judgment against the defendant L. R. Benjamin, on the ground that he had filed no answer to the petition, and it is insisted that the court erred in overruling the motion. The cause of action was predicated on the negligent construction and maintenance of the wires, and the petition alleged that Benjamin was the company's general manager in charge of such construction and maintenance. The answer denied all negligence on the part of the company's agents and servants, including Benjamin, and interposed a plea of contributory negligence. Even if it be conceded that the answer was only the answer of the company, the defenses interposed were not purely personal to the company, but were such as would preclude a recovery by appellant, and therefore inured to the benefit of both defendants, and no judgment could be rendered against either until the issues raised had been disposed of. Tackett v. Green, 187 Ky. 49, 218 S. W. 468; Electrolytic Chlorine Co. v. Wallace & T. Co., 328 Mo. 782, 41 S. W. (2d) 1049, 78 A. L. R. 930. However, it is by no means clear that only the company answered. The record discloses that the defendants filed a general demurrer, and, without waiving same, filed answer. The answer is not denominated the answer of either defendant. In some instances it uses the word "defendant" and in other instances the word "defendants." Appellant did not make a motion at the outset of the trial to have the allegations of the petition taken as confessed as to Benjamin. On the contrary, the answer was treated as a joint answer of both defendants. The case was tried on that theory, and, after hearing all the evidence to which there were no objections on the ground that Benjamin had not answered, the court directed a verdict in favor of both defendants. In the circumstances, even if there was a failure to answer, such failure was waived, and appellant's motion came too late. It follows that the court did not err in overruling the motion.

No other questions are passed on.

Judgment reversed and cause remanded for a new trial consistent with this opinion.

Whole court sitting.