## Citizens Nat. Bank of Bowling Green v. Phillips et al.

(Decided April 21, 1936.)

(As Modified on Denial of Rehearing June 23, 1936.)

**74**

STOUT & HERDMAN for appellant.

MILLIKEN & MILLIKEN and RODES K. MYERS for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On July 8, 1933, appellant brought this suit in the Warren circuit court against D. E. Phillips on two notes—one for $2,000 and another for $350—and prayed for a general order of attachment against Phillips' property.

At that time and for some time previous thereto, Phillips also owed the Prudential Insurance Company a note of about $2,650 secured by a first-lien mortgage on a house and lot in Bowling Green, Ky., and he also owed the American National Bank certain sums of money, $1,000 of which was secured by a second mortgage on the same house and lot and another note for $4,000 only partly secured by certain collateral. However, on July 31, 1933, subsequent to the filing of this suit by appellant, the American National Bank recorded a mortgage dated May 25, 1933, on the same house and lot as "better security" to the $4,000 note mentioned above. There were also certain other loans made to Phillips by the American National Bank in July and August respectively, 1933, secured by mortgages on certain personal property of Phillips. But in brief for appellant bank the $4,000 note and mortgage only are discussed. It is the well-known rule that matters not discussed in briefs will not be considered by this court. Therefore, we will only consider the transactions relating to the $4,000 note.

On July 8, 1933, about one week after the American National Bank had recorded its mortgage dated May 25, 1933, above referred to, appellant bank filed its amended petition making the Prudential Insurance Company and the American National Bank parties to the action, alleging that the mortgage to secure the $4,000 note was a fraudulent conveyance made with

intent to prefer the American National Bank to other creditors, and that Phillips was insolvent at that time and that his insolvency was known to the American National Bank, and prayed that the mortgages be set aside and the property be sold for appellant bank's indebtedness. The insurance company filed its answer asserting a first-lien mortgage against the property, and about this there is no controversy. The American National Bank filed no answer to the amended petition, but its codefendant, Phillips, filed his answer admitting the execution of the mortgage but denying that the mortgage was preferential or fraudulent, and denied that he was insolvent, and further pleaded fully to the merits of the case with respect to the mortgage to the American National Bank. This answer inured to the benefit of Phillips' codefendant, American National Bank, and it is not material that it did not file its separate answer or specifically join with its codefendant in his answer. Beddow's Adm'r v. Barbourville Water, Ice & Light Co. et al., 252 Ky. 267, 66 S. W. (2d) 821.

By subsequent pleadings the issues were made and the evidence taken and the cause submitted for judgment and the court entered judgment adjudging that the Prudential Insurance Company had a first and superior lien on the house and lot by virtue of its mortgage, and that the American National Bank had a second lien on the same house and lot to secure the payment of the $1,000 note with interest, and that it also had a third lien against the same house and lot to secure the $4,000 note with interest by virtue of its mortgage dated May 25, 1933, and that appellant Citizens National Bank had a fourth lien on the same house and lot to secure its debts aforesaid. It was also adjudged that the mortgage given the American National Bank to secure the payment of the $4,000 note was not preferential or fraudulent and was superior to the attachment lien of the Citizens National Bank. The court also adjudged that the sale of the property shall not be ordered until appellant bank executed bond to secure the costs of the sale in the event the property did not bring enough to pay the superior liens

The record before us does not disclose when any orders of attachment were issued or levied, or that any attachment bond was executed. In the appellant bank's

amended petition asking that the mortgage be set aside, it is alleged that the mortgage to the American National Bank dated May 25, 1933, was not recorded until after the appellant bank's suit had been filed and the attachment prayed for, but it is not alleged that the attachment was issued or executed.

But since the court adjudged the appellant, Citizens National Bank, a lien on the property, we presume that the order of attachment had been issued and levied, otherwise the court would not have adjudged it a lien at all; and, inasmuch as the lien adjudged to appellant bank was inferior to appellee bank's lien, it will be presumed that the appellee bank had acquired its lien before the issuance and levy of the attachment resulting in the appellant's lien. The record before us being incomplete in respect of the time of the issuance and levy of appellant's attachment, we presume that the record justified the chancellor's judgment as to priority of liens.

The next question for our consideration is whether or not the mortgage given by Phillips to the American National Bank to secure the $4,000 note was an attempt by Phillips to prefer that bank to other creditors and done in contemplation of insolvency. It was, therefore, incumbent upon appellant bank to show that Phillips was insolvent.

The mere giving of a mortgage to secure an existing indebtedness is not in itself evidence of insolvency; nor is it such "badge of fraud" as will shift the burden of proof to the mortgagor to show that he was not insolvent. H. B. Rice & Co. v. Miners' Elkhorn Coal Co., 234 Ky. 580, 28 S. W. (2d) 783.

The Citizens National Bank introduced as its witnesses G. D. Sledge, president of the American National Bank, and the defendant, D. E. Phillips, as upon cross-examination. Mr. Sledge admitted that the $4,000 note secured by the mortgage dated May 25, 1933, was a renewal note and no new money was loaned to Phillips at that time. He testified that the note was originally partly secured by certain collateral to the extent of $3,000 only, and that this collateral had become practically worthless, and he considered that he had practically no security whatever on this note. Explaining

the circumstances under which this mortgage was executed, Mr. Sledge testified on cross-examination as follows:

"Q. What, Mr. Sledge, prompted you to try to get additional security on that $4,000 note? A. Well, we had collateral calling for $3,000.00 leaving $1,000.00 unsecured, you might say. Mr. Phillips owned a home subject to two mortgages, but I figured probably some equity there not covered by the mortgage, and as formerly stated, Mr. Phillips had owed us right smart money for a right smart while, and we have asked him at times to pay us some money, pretty hard at times to get money, he wasn't paying us anything, and I knew he was making some money, and I was not satisfied with the way it was going, and finally he admitted to me after I asked him time and again, that he was paying other obligations that he owed. We were not getting any of it, so when I found that out, I insisted on his giving some other kind of security, and the result was that mortgage to further secure it.

"Q. Did you ascertain from him who he was paying money to and not to you? A. Yes, sir, mainly to the Citizens National Bank, of this city."

Phillips' testimony was in substance the same as that of Mr. Sledge.

With respect to the solvency or insolvency of Phillips, the record does not show whether or not he was insolvent, except that the circumstances may create a suspicion that he was insolvent. But since fraud will not be presumed, but must be proven by convincing evidence (Hickman Bank & Trust Co. v. Pickard and Mayberry, 207 Ky. 772, 270 S. W. 30; E. L. Martin & Co. v. Osborne, et al., 207 Ky. 611, 269 S. W. 759), we are unable to conclude from the circumstances that Phillips was actually insolvent. He was cross-examined by counsel for appellant, but counsel did not ask him whether or not he owned any property other than that covered by the mortgages, nor was the actual value of the mortgaged property shown. In so far as the record discloses, Phillips might have owned other property.

It is our conclusion, therefore, that appellant failed to prove or establish that Phillips was insolvent, or that the giving of the $4,000 mortgage to the American National Bank was done for the purpose of defrauding his other creditors, or that it was preferential.

We do not think it was an abuse of discretion on the part of the court in requiring appellant to execute bond for costs before ordering the property sold in satisfaction of its inferior lien. It does not appear that the superior lienholders were asking for an order of sale of the property at the present time, but were content to wait until a possible change in conditions when the property might bring a better price. If the court believed that a sale of the property at the present time might not produce an amount equal to or in excess of the prior lienholders' debt and interest, it was but proper that it require appellant to execute bond for cost of the sale in the event the property did not produce an amount in excess of the prior liens. It would be unjust to a superior lienholder to permit an inferior lienholder to force a sale of property at the cost of the superior lienholder, who is entitled to the full amount of his debt, interest, and costs before any part of the proceeds of the sale should be applied to the debt of the inferior lienholder.

Judgment affirmed.