## Union Central Life Ins. Co. v. Shelman et al.

(Decided Nov. 16, 1937.)

WILLIAM E. BERRY for appellant.

WALLS & KINCHELOE and ALLEN R. KINCHELOE, and ASHCRAFT & MORGAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Union Central Life Insurance Company appeals from a decree adjudging E. H. Shelman, trustee for William McGlothlan, E. R. McGlothlan, and Louis Sauer, and J. D. Lyddan, committee for William D. Miller, and W. E. Brown, statutory guardian of James H. Gray, a prior lien on a 106-acre tract of land located in Breckinridge county.

The facts may be summarized as follows: On March 8, 1917, the Bank of Hardinsburg & Trust Company conveyed to A. T. Beard, H. M. Beard, and T. B. Beard the 106-acre tract of land. The consideration was 35 notes for $100 each, payable over a series of years. The notes were secured by a lien on the land. Five of these notes were paid. After they were due the remaining 30 notes were transferred to numerous trust estates without the knowledge of the beneficiaries, and without any assignment of record. Thirteen of the notes are held by appellees, and the other 17 have been acquired by the special deputy director of banks after the bank went into liquidation. On January 30, 1922, H. M. Beard, T. B. Beard and wife, and A. T. Beard and wife, mortgaged several tracts of land, including the 106-acre tract, to the Bank of Hardinsburg & Trust Company to secure a large loan. Thereafter T. B.

Beard acquired from his brothers their interest in the 106-acre tract of land. On July 23, 1926, he and his wife executed to the Union Central Life Insurance Company a mortgage on various tracts of land in Breckinridge county, including the 106-acre tract, to secure a loan of $35,000. On the same day the Bank of Hardinsburg & Trust Company and Green Brothers executed a deed of release, reading is part as follows:

"Witnesseth: That whereas on January 30, 1922, by mortgage dated on that date, recorded in Book 35, page 524, of the County Court Clerk's Office of Breckinridge County, Kentucky, the second parties hereunto mortgaged certain property to the Bank of Hardinsburg & Trust Company, to secure the payment of certain notes, among others, a note for $10,000.00 and another for $10,000.00 and another for $3,000.00 and a fourth for $4,411.00.

"And whereas, the last mentioned note for $4,411.00 has heretofore been paid to the said Bank of Hardinsburg & Trust Company, the true and lawful owner and holder therein the lien of the land described in the mortgage above referred to, or any other mortgage, recorded or unrecorded, in favor of said bank is hereby released, as to that note, and

"Whereas, the first three notes mentioned and described in the mortgage above referred to, or two notes of $10,000.00 each, and the note for $3,000.00 were by the said Bank of Hardinsburg & Trust Company, for a valuable consideration sold and assigned to the firm of Green Brothers, of Falls of Rough, Kentucky, and

"Whereas, the first note of $10,000.00 mentioned in the mortgage above referred to has this day been paid in full, the lien on all the property described in the said mortgage is hereby released, so far as that particular note is concerned; but no further, and also in consideration of the payment of said $10,000.00 on the above mentioned indebtedness, the said first parties of this instrument hereby jointly and severally release all claim and lien of every character, on the following described portions of the land and property described in the mortgage above referred to."

Following the above are numerous references to numerous tracts of land, each of which gives the date

of the deed, name of the grantors and grantees, and the page and number of the deed book in which the deed is recorded. The reference to the 106-acre tract is in the following language:

"The eleventh tract described in said mortgage being 106 acres conveyed by the Bank of Hardinsburg & Trust Company to Beard Brothers dated March 8, 1917, recorded in said office in Book 65, page 506."

The deed of release concludes with the following: "All of the land herein intended to be released are fully described by metes and bounds, in a mortgage from Thomas B. Beard and wife to the Union Central Life Insurance Company, dated June 29th, 1926, and this day filed for record in the said County Court Clerk's Office."

The Union Central Loan was closed by A. A. Van Winkle, an abstractor, of Owensboro, Ky. On his direct examination his testimony is as follows: The substance of his understanding with the bank was that the bank was accepting a certain amount of money from the Union Central out of the loan the Union Central was making on a certain part of the Beard land, and the bank was to release that part of the land in full, and to hold as security the balance of the debt by a mortgage from Thomas Beard and wife. He paid over to the bank the money agreed upon. He attempted to have a release made that would take care of the particular item. He, Franklin Beard, the bank's president, and Sam Meador drove to the Falls of Rough and a release was written down there in Green Brothers' office on a typewriter. He was writing it, and tried to cover all the notes. The property is described in the deed recorded in Deed Book No. 65, page 506, and was included in the Union Central mortgage. That deed was mentioned among those intended to be released. In making the loan and in paying over to the bank $20,000 he relied on the record as to whether the bank was the holder of the lien. On cross-examination he testified as follows: He was the authorized abstractor of the Union Central Life Insurance Company. He examined the original deed containing the various lien notes of record and talked to Franklin Beard concerning them. The company made a loan of $35,000. When he found the lien notes of record in the clerk's office he

did not inquire of Mr. Beard as to whether the bank had assigned the notes because the record was supposed to show the owner. He talked about all the notes with Mr. Beard, and did not know that Green Brothers held one of them until the matter was closed. That note was for $10,000. It was the understanding that he was to get the notes when he got back to Hardinsburg, but overlooked them. The 35 notes were mentioned at the Falls of Rough. The reason that he did not have Mr. Beard release the particular notes on the margin of the deed was that the matter was overlooked both there and at Cincinnati. The reason he did not specifically mention the 35 notes in the deed of release like he did the two $10,000 debts was that he thought he had sufficient release when he put them in there. "It was my mistake." Part of the $20,000 was supposed to have gone toward liquidating the notes on the 106-acre tract of land, and that was his understanding with Mr. Beard. The other $15,000 went to pay off other liens. He did not remember what they were. None of the $15,000 was paid to the bank. It went to others. Only the check for $20,000 was paid to the bank. He never reported to the Union Central that he had an agreement with Franklin Beard, the president, to turn over the 35 $100 lien notes. The whole thing was overlooked. All the notes intended to be released that were not forgotten were surrendered to him for the Union Central. He never called on Mr. Beard, the president of the bank, to deliver the notes. They were overlooked. When he got back to the bank he forgot to ask Mr. Beard about the notes. Mr. Beard did deliver to him all the other notes specifically referred to, and he surrendered them to the Union Central. The Commonwealth Life Insurance Company got the greater part of the $15,000.

The testimony of W. J. Piggott, liquidating agent, is as follows: According to the bank records no part of the $20,000 paid to the Bank of Hardinsburg & Trust Company by the Union Central Life Insurance Company was paid or used toward the liquidation of the lien notes on the Kennedy tract of 106 acres; $10,000 of that money was paid to the Green Brothers and the other $10,000 was paid to Beard Brothers, and credited to their account in the bank.

On behalf of appellant we have the following argument: Van Winkle was a competent witness. The understanding between him and the president of the

bank was that the $20,000 was paid not only to discharge other indebtedness, but to discharge the lien notes on the 106-acre tract of land. Not only was the bank the trustee of the different estates, but it appeared of record as the holder of the notes. Therefore, the bank was the proper party to receive payment, and the payment to it extinguished the lien. In telling of his conversation with the bank's president who was then dead, Van Winkle testified not for himself, but for his principal, the Union Central, and there can be no doubt that he was a competent witness. Terrell v. Flack's Adm'r, 236 Ky. 325, 33 S. W. (2d) 23; Beddow's Adm'r v. Barbourville Water, Ice & Light Co., 252 Ky. 267, 66 S. W. (2d) 821. If it had been shown that the lien notes appeared on the abstract of title, and the $20,000 check included not only the exact amount due on other indebtedness, but the exact amount due on the lien notes, a different question would be presented. But that is not the situation. All that we have is that the lien notes were discussed, and there was a general understanding that they were to be released, but the whole matter was overlooked. On the other hand we have the following circumstances: One of the $10,000 notes referred to in the mortgage was held by the Green Brothers, and Van Winkle and Mr. Beard, the bank's president, drove out to the Falls of Rough to. get a release from the Green Brothers. Though the release is somewhat vague and indefinite, its purpose was to release the 2 $10,000 notes. It is not claimed that there are any indorsements on these two notes that would bring the amount below the $20,000 check. On the contrary the bank records show that out of the $20,000 check $10,000 was paid to the Green Brothers and $10,000 paid to the Beard Brothers and credited to their account in the bank. When we consider the fact that the witness took the pains to drive to the Falls of Rough for the purpose of preparing and obtaining a release of the mortgage indebtedness, coupled with the fact that on the face of things the $20,000 paid to the bank was no more than sufficient to discharge the 2 $10,000 mortgage notes, we are not disposed to hold that the evidence was sufficient to show that the lien notes in question were actually paid, or that there was an understanding that they should be released and a matter of such importance was entirely overlooked. It follows that the chancellor did not err in decreeing appellees a prior lien on the property.

Though the special deputy director of banks and the Bank of Hardinsburg & Trust Company have entered their appearance, they have not appealed or prosecuted a cross-appeal, and in the absence of such action we refrain from passing on any question between them and the Union Central Life Insurance Company.

Judgment affirmed.